GANNON ET AL., APPELLEES, *v.* PERK ET AL., APPELLANTS.
CLEVELAND POLICE PATROLMEN'S ASSOCIATION ET AL., APPELLEES, *v.* CITY OF CLEVELAND ET AL., APPELLANTS.

[Cite as Gannon v. Perk (1976), 47 Ohio App. 2d 125.]

126

(Nos. 34360 and 34361—Decided February 20, 1975.)

*Mr. Thomas J. Friel,* for appellees Jack Gannon et al.

*Mr. James L. Oakar,* for appellees Cleveland Police Patrolmen's Association et al.

*Mr. John R. Climaco,* for appellees Fraternal Order of Police et al.

*Mr. Clarence Rogers, Jr.,* for appellees James Trusso et al.

*Mr. James B. Davis,* director of law, and *Mr. Malcolm C. Douglas,* for appellants Ralph J. Perk et al.

KRENZLER, C. J. This appeal involves both appeals and cross-appeals from a final judgment of the Common Pleas Court of Cuyahoga County in case numbers 895,536 and 935,969, which were consolidated for trial, and which held in substance that police and fire officers of the city of Cleveland have a special status under Sections 116 and 118 of the city Charter and therefore cannot be laid off because of the city's financial crisis. The court also held that temporary employees on the city payroll *more* than 90 days and *less*

than two years are illegally on the payroll and cannot be paid.

The foregoing issues have been pending in the Common Pleas Court of Cuyahoga County since June 4, 1971 when case No. 895,536 was filed by the Cleveland Police Patrolmen's Association against the city of Cleveland and its former Mayor.

In that declaratory judgment action the court was asked to declare that under the Charter of the city of Cleveland no officer or patrolman of the police force of the city could be laid off, or in the alternative that no patrolman could be laid off until all persons holding a position in the classified service contrary to law were first laid off. In addition, injunctive relief was requested.

The plaintiffs alleged that Section 116 of the Charter of the city of Cleveland places the sole responsibility for setting the number of officers and patrolmen of the Cleveland Police Department with the Council of the city of Cleveland and that Council has done so by enacting Ordinance Section 1.3502.

In that action the plaintiffs also alleged that there were approximately 1000 temporary employees in the employ of the city of Cleveland, and that Section 130 of the Charter provides that the Civil Service Commission shall maintain eligible[1] lists for employment, and also temporary employees may be hired without tests for not more than 90 days, and that Section 135 provides that the Treasurer shall not pay, nor shall the Commissioner of Accounts issue a voucher for the payment of any salary or compensation unless the payroll or account of such salary or compensation shall bear the certificate of the Civil Service Commission, and that such person is performing a service in accordance with the civil service provisions of the Charter and the Civil Service Commission rules. It was alleged that temporary City employees were being paid in contravention of the Charter and ordinances of the city of Cleveland.

In Common Pleas Case No. 895,536, the trial court after hearing concluded as to the first issue that the Director of Public Safety of the city of Cleveland, pursuant to the

Charter and the rules of the Civil Service Commission, may proceed for lack of funds to lay off persons employed in the classification of patrolman in the inverse order of seniority. The trial court held that under Section 67 of the Charter, the executive and administrative powers of the city are vested in the Mayor, directors of departments and other administrative officers, and that Section 115 of the Charter provides that the Mayor is the executive head of both the police and fire forces. The trial court also stated that Section 127 of the Charter provides that the Civil Service Commission shall make rules with respect to layoffs and that Section 8.20 of the rules provides that layoffs will be made by the appointing authority with the last hired to be the first laid off. The appointing authority, and thus the person who may order layoffs, is the Director of Public Safety as set forth in Ordinance 1.3502.

The trial court concluded in case No. 895,536 that enactment of an ordinance by the city Council providing for the number of police officers, their classification and their salaries does not preclude the Mayor and the Director of Public Safety from laying off such police officers and fire officers as long as such layoffs are in conformity with the civil service rules regarding layoffs. The question of layoffs is a question for the executive branch of government as long as it is done in conformity with the Charter and the ordinances of the city of Cleveland and the civil service rules regarding layoffs.

As to the legality of temporary employees, the Court held that Section 130 of the city Charter provides for filling positions on a temporary basis not to exceed 90 days and that Section 135 of the Charter provides in unmistakably clear language that the Treasurer shall not pay any person unless that person is holding his position in accordance with the provisions of the Charter.

The trial court held in Case No. 895,536 that temporary employees on the payroll for more than 90 days and who have not been tested and certified by the Civil Service Commission are not legally on the payroll. However, the trial court stated that the continuation of the effective adminis-

tration of government within the city of Cleveland requires that such temporary employees be retained during the period reasonably necessary for the Civil Service Commission to conduct such examinations. The Court then ordered a schedule of examinations and adopted a plan for the expeditious examination, certification and appointment of persons presently holding temporary appointments. The request for an injunction preventing the layoff of the patrolmen for lack of funds was denied, and the court reserved and continued its jurisdiction in the case.

On November 21, 1974, some three and one-half years after the entry of the judgment of the trial court in case No. 895,536, and after an announced proposal of layoffs of police and firemen by the Mayor of the city of Cleveland, which layoffs would take effect on January 1, 1975, Jack Gannon and other fire fighters of the city of Cleveland filed Common Pleas case No. 935,969, which is similar to and raises the identical issues raised in the aforementioned case No. 895,536. Upon appropriate motion, the Fraternal Order of Police, Lodge No. 8, and the Cleveland Police Patrolmen's Association were permitted to intervene as new parties in case No. 935,969.

Since the trial court maintained continuing jurisdiction over case No. 895,536, the plaintiffs in case No. 935,969 filed a motion to consolidate the two cases because the issues were the same. Said motion was granted without objection and both cases were consolidated and the case assigned to another judge. A lengthy hearing was held, after which the trial court entered its judgment which was not consistent with that previously entered by the other judge in case No. 895,536.

As to the issue of whether the Mayor can lay off police and fire officers, the trial court held on December 31, 1974, that the Charter of the city of Cleveland mandates Council as the exclusive authority to establish the number of men in the division of police and fire in the Department of Public Safety, and that this authority can in no way be infringed upon or usurped by the executive branch of the city government; that Ordinance Sections 1.3502 and 1.3511 es-

tablish the number of men to be employed in the police and fire forces of the city of Cleveland, and that these ordinances are mandatory and must be complied with. It concluded that if there are layoffs, Council must amend its ordinances or pass a companion resolution.

The trial court then held that the layoffs by the executive branch of government are contrary to law and that the Mayor and other executive administrators are enjoined and restrained from laying off 119 fire fighters and 169 police patrolmen scheduled for January 1, 1975, until further order of the Court.

As to the second issue, regarding the temporary employees, in a separate entry, the trial court found that there are in excess of 1,000 temporary city employees who have worked more than 90 days without testing. It held that Section 130 of the Charter provides for filling positions on a temporary basis not to exceed 90 days and that Section 135 of the Charter provides that the Treasurer shall not pay any person unless such person is holding his position in accordance with the provisions of the Charter. The trial court then enjoined and restrained the Mayor from ordering any director or any other member of the city of Cleveland to pay out monies contrary to the Charter provisions. The court ordered that the city Treasurer shall not pay, nor shall the Commissioner of Accounts issue a voucher, nor shall any member of the Civil Service Commission certify, for payment any salary or compensation to any person employed by the city of Cleveland for any period exceeding 90 days but less than two years on a temporary employment status who is not qualified for civil service classification through an examination.

Defendants-appellants, city of Cleveland, et al., have taken this appeal with six assignments of error:

1. The trial court erred in granting any injunctive relief, appellees having an adequate remedy at law by way of appeal from allegedly wrongful layoffs, pursuant to Chapter 2506 of the Ohio Revised Code.

2. The trial court erred in concluding that under the Charter of the City of Cleveland, the executive branch of

the city government was without power or authority to lay off policemen and firemen.

3. The trial court erred in concluding that the Charter of the city of Cleveland creates a specially protected class of public employees, consisting of the appellant city's policemen and firemen.

4. The trial court erred in substituting its judgment for the judgment of the duly elected Mayor of appellant city by determining municipal priorities with respect to the layoff of appellant's employees.

5. The trial court erred in granting a declaratory judgment adjudicating the legal status of untested employees of appellant city in the absence of such temporary employees as parties litigant.

6. The trial court erred in enjoining appellant city from compensating its untested temporary employees, without first having considered appellants' obligations under applicable federal law or having weighed and balanced the equities, including the impact of such an order upon the public interest.

The plaintiffs-appellees, Jack Gannon, et al., as cross-appellants, have three assignments of error, as follow:

1. The trial court erred in applying state law (Section 124.271 Ohio Revised Code) which is applicable to state, county, and non-charter cities as applying to employees of the city of Cleveland, a charter city.

2. The trial court erred in concluding that under the Charter of the city of Cleveland, a written demand for the Law Director to bring an action could not be excused because a written demand upon the Law Director would be a vain thing.

3. The trial court erred in concluding that firefighters could be laid off by the city of Cleveland while the city continued to violate the civil service laws.

New party intervenors, The Fraternal Order of Police. Lodge No. 8, filed a cross-appeal with two assignments of error:

1. The court below erred in holding that: state law by statute grants permanent and regular civil service status to

all such employees who have been on the city payroll in excess of two years.

2. The court below erred in not holding that members of the Cleveland Police Department cannot be laid off even with the prior approval of the Council of the city of Cleveland until all temporary employees employed in excess of ninety days contrary to Section 130 of the Charter of the city of Cleveland are first laid off.

All of the foregoing assignments of error raise four major issues, which are:

1. May the plaintiffs-appellees, who are police and fire officers and their respective representative organizations, maintain a declaratory judgment action which also seeks ancillary injunctive relief, which challenges the legality of proposed layoffs in anticipation of being laid off, or must they wait until they are actually laid off and then take an administrative appeal, pursuant in the city Charter and R. C. Chapter 2506, the Appellate Procedure Act.

2. Do Sections 116 and 118 of the Charter of the city of Cleveland grant to fire and police officers a special or preferred status which separates them from all other city employees, so that such police and fire officers may not be laid off in the event of the city's financial crisis, or, are police and fire officers to be treated the same as other city employees who may be laid off in accordance with the Charter, ordinances and civil service regulations.

3. May temporary city employees be retained on the payroll for more than 90 days without taking a civil service examination and being certified thereunder.

4. Does R. C. 124.271, which provides in substance that a temporary employee who remains on the payroll for two years without passing a civil service test and being certified attains the status of a permanent employee, take precedence over Section 130 of the city Charter which provides that temporary employees can only be on the payroll for ninety days without taking and passing a civil service examination.

Subsequent to the filing of this appeal, Cleveland city Council enacted an ordinance approving the proposed lay-

offs of both policemen and firemen by the city. This action may have mooted the issue of whether Council legislation was required before the city could lay off policemen and firemen. However, because of the great public interest involved and because the matter may recur, we will answer the question of whether the Mayor may lay off policemen and firemen in times of financial crisis without city Council approval.[2]

## I.

Plaintiffs brought a declaratory judgment action seeking a declaration that police and fire officers have a special status under the Charter and ordinances of the city of Cleveland and that the authorized strength is established by Council, and therefore that they cannot be laid off by the Mayor for financial reasons. Also, they sought a declaration that temporary employees on the payroll for more than 90 days without civil service certification are illegally on the payroll. Ancillary to the foregoing declarations they sought injunctive relief.

There is no question that whenever a city of Cleveland employee is laid off he can take an administrative appeal through the Civil Service Commission[3] and the courts.[4] However, this is not the exclusive remedy for that employee. He has the alternative remedy of bringing a declaratory judgment action,[5] which is an action at law and not in equity. *Realty Corporation* v. *Columbus* (1970), 21 Ohio St. 2d 265, 268. Further, the rule that an equitable action cannot be maintained if there is an adequate remedy at law is not violated when the party bringing the declaratory judgment action also seeks ancillary injunctive relief because the nature of the action has not been changed from

[1]The Charter refers to these as "eligible" lists and not "eligibility" lists.

[2]See *In re Popp* (1973), 35 Ohio St. 2d 142; and *Wallace* v. *University Hospitals of Cleveland* (1961), 171 Ohio St. 487, which acknowledged the "public interest" exception to the mootness doctrine.

[3]Cleveland, Ohio, Charter Section 121.

[4]R. C. Chapter 2506.

one at law to one in equity. *The Complete Building Show Co.* v. *Albertson* (1918), 99 Ohio St. 11. Therefore, the plaintiffs appellees may maintain this declaratory judgment action which does seek ancillary injunctive relief. The trial court acted correctly when it refused to dismiss the declaratory judgment action, and the defendants appellants' first assignment of error is not well taken.

## II.

The Ohio Constitution provides that cities may adopt charters and exercise powers of local self government.[6] Pursuant to these constitutional provisions, the city of Cleveland did adopt a charter which includes sections dealing with the power and duties of the mayor as chief executive officer of the city, city Council, directors of departments, police and fire forces, and civil service.

The legislative power of the city is vested in Council.[7]

The executive and administrative powers of the city are vested in the Mayor, directors of departments, and other administrative officers.[8] The Mayor is also the chief conservator of the peace in the city,[9] and is executive head of both the police and fire forces.[10] The director of these departments is the executive under the direction of the Mayor. The police force consists of a chief, and such other officers, patrolmen and employees as may be provided by ordinance or resolution of Council.[11] The fire force consists of the chief and such other officers, firemen and employees as provided by ordinance or resolution of Council.[12] The Chief of Police and Fire Chief have the exclusive right to suspend any of their officers and employees who may be under their respective management and control for incompetence, gross neglect of duty, gross immorality, habitual drunkeness, failure to

---

[5]R. C. Chapter 2721 and Civil Rule 57; also see *Schaefer* v. *First National Bank* (1938), 134 Ohio St. 511.

[6]Ohio Const., Art. XVIII, Sections 3 and 7.

[7]Cleveland, Ohio, Charter Section 24.

[8]Cleveland, Ohio, Charter Section 67.

[9]Cleveland, Ohio, Charter Section 71.

[10]Cleveland, Ohio, Charter Section 115.

[11]Cleveland, Ohio, Charter Section 116.

[12]Cleveland, Ohio, Charter Section 118.

136

obey orders given by the proper authorities, and for any just and reasonable cause.[13]

Because of the Ohio Constitution's requirement that all government employees be in the classified service, the Charter of the city of Cleveland provides that generally all city employees shall be in the classified service and that the Civil Service Commission shall make rules for the appointment, promotion, transfer, layoff, reinstatement, suspension and removal of city officials and employees in the classified service.[14]

Further, the Charter provides that the Director of the Safety Department or the Mayor shall classify the police and fire service of the city in conformity with the ordinance of Council concerning the number of persons to be employed therein.[15]

The rules of the Civil Service Commission provide for testing, creation of eligible lists and certification of employees to various departments. Any person in the classified service of the city, who has been suspended, reduced in rank, or dismissed from the service of the city, may appeal from such decision to the Civil Service Commission.[16] Any person appointed from an eligible list who has been laid off for lack of work or appropriation shall be placed at the head of such eligible list and shall be eligible for reappointment for the period of eligibility provided by the rules of the Commission.[17]

Pursuant to the aforementioned Sections 116 and 118 of the Charter, which provide that police and fire forces shall consist of such officers, patrolmen and employees as may be provided by ordinance or resolution of Council, Council enacted Ordinance Sections 1.3502 and 1.3511, which set forth the ranks and numbers of persons to serve as police and fire officials who will be appointed by the Director of Public Safety.

[13]Cleveland, Ohio, Charter Section 119.
[14]Cleveland, Ohio, Charter Section 127.
[15]Cleveland, Ohio, Charter Section 122.
[16]Cleveland, Ohio, Charter Section 121.
[17]Cleveland, Ohio, Charter Section 134.

Sections 1.3502 and 1.3511 provide for appointment of 2841 police officers, which include 2500 patrolmen, and for 1790 fire officials, which include 1500 firemen, respectively. The record discloses that there were approximately 1990 patrolmen and 1263 firemen on the payroll at the time of the announced layoffs, which is substantially below the authorized strength provided for in the two ordinances.

In order to protect the financial integrity of governmental agencies the Ohio Constitution and statutes and the Cleveland Charter set forth mandatory procedures for the preparation and adoption of budgets, which procedures require governmental agencies to anticipate income and expense and limit expenditures to anticipated revenue. Under law, a governmental agency cannot expend more money than it receives as income.

In the event of a financial crisis, when income falls below that anticipated, a governmental agency must reduce its expenditures so that it will not incure a deficit. Generally, the accepted way of accomplishing this is by way of layoffs of employees, since the largest portion of a budget is for employees.

Lack of funds or financial crisis is a legitimate basis for laying off city employees, but such layoffs must be made in accordance with law. In the process of such layoffs for financial reasons, permanent civil service employees may be laid off. *State, ex rel. Buckman,* v. *Munson, Dir.* (1943), 141 Ohio St. 319.

In the case of the city of Cleveland such layoffs of permanent civil service employees must be in accordance with the Charter provisions, ordinances and civil service regulations. Such layoffs must not be used as a subterfuge to circumvent civil service rules, and the record must clearly demonstrate that the proposed layoffs are for economy reasons.

The Charter and ordinances of the city of Cleveland do not establish a mandatory priority for layoffs between city departments in the event of a financial crisis. This is a matter within the sound discretion of the chief executive officer, namely the Mayor, in accordance with the Charter,

138

ordinances and civil service rules, which provide that layoffs may be made by the appointing authority with the last hired to be the first laid off.[18]

In the present case the record is clear and it has been admitted by all parties that the city of Cleveland does have a financial crisis and that the proposed layoffs are not for the purpose of circumventing civil service rules. Further, we do not have before us the issue of whether the proposed layoff of the police and fire officers would weaken the police and fire forces to such an extent that it would jeopardize the safety of the city and thus be subject to attack as a gross abuse of discretion. There was some testimony in this regard but no serious issue was made as to whether the proposed layoffs of policemen and firemen would weaken the safety of the city.

Having established that the city of Cleveland may make layoffs in times of financial crisis and that permanent civil service employees may be laid off in accordance with the Charter, ordinances and civil service regulations, we must now determine whether the police and fire officers of the city of Cleveland are to be treated the same as other municipal employees or whether Sections 116 and 118 of the Charter confer a special status upon them that would make them exempt and immune from layoffs when the city has a financial crisis.

Since the Charter and ordinances of the city of Cleveland do not establish priorities between departments for layoffs in the event of a financial crisis by the city, we must only decide whether Sections 116 and 118 of the Charter give to the police and fire officers a special status that precludes them from being laid off for financial reasons.

We must answer the questions of whether Sections 116 and 118 of the Cleveland Charter direct the Cleveland Council to enact an ordinance or resolution which will set forth the ranks and numbers of officers, patrolmen, firemen and other employees? Further, when such ordinance or resolution is enacted is the Mayor mandated by the Charter

---

[18]Cleveland, Ohio, Civil Service Rules Section 8.20.

to hire such policemen and firemen in the ranks and numbers set forth in the ordinance, and once hired can such policemen and firemen be temporarily laid off because of the adverse financial condition of the city; or do Sections 116 and 118 of the Charter mean that when Council enacts such an ordinance or resolution it merely establishes the authorized strength of the police and fire departments, and that the Mayor may hire policemen and firemen up to such authorized strength within the financial resources of the city and within his sound judgment as to the safety needs of the city?

Unfortunately, neither of the above interpretations of Sections 116 and 118 are clearly set forth in those sections. We must therefore interpret the meaning of these sections, and to do so we must review them in pari materia with other sections of the Charter, and principally Sections 67, 71, 115 and 122, which are concerned with the authority, responsibility and duties of the Mayor, as chief executive officer.

It is our opinion that Sections 116 and 118 are directory to Council and enable it to enact ordinances or resolutions establishing the authorized ranks and numbers of the police and fire departments as to officers, patrolmen, firemen and other employees, and that once such legislation is enacted the Mayor is authorized to hire and lay off policemen and firemen within those numbers and within the financial resources of the city, the safety needs of the city, and as his sound judgment dictates.

We hold that these sections of the Charter do not make police and fire officers immune or exempt from layoffs for financial reasons, nor do they give them preferred status or priority over permanent civil service employees of other departments of the city in the event layoffs are necessary for financial reasons. Also, we hold that Council authorization for layoffs is not necessary either by ordinance or resolution, nor must Ordinance Sections 1.3502 and 1.3511 be amended before the Mayor may make layoffs in the police and fire departments for financial reasons. In other words, it is not necessary to amend Sections 1.3502 and 1.3511

reducing the safety forces before the Mayor can reduce such safety forces because of the city's financial crisis.

However, if the Mayor makes excessive layoffs in the police and fire departments, or in any other city department, and it can be established that the health, safety, morals, and welfare of the city are jeopardized by such action of the Mayor, a court action may be maintained against the Mayor for gross abuse of discretion. However, we do not have that issue before us in this case and we are only called upon to interpret Sections 116 and 118 and whether the Mayor has the sole executive discretion to lay off policemen and firemen in times of financial crisis, or whether Council approval is necessary before such layoffs can take effect.

## III.

As to the issue regarding the legal status of temporary city employees who have worked more than 90 days without attaining civil service status of which there were over 1,000 on the payroll as of January 1, 1975, Section 130 of the Charter provides for filling positions on a temporary basis not to exceed 90 days, and Section 135 of the Charter provides that the Treasurer shall not pay any person, unless that person is holding his position in accordance with the provisions of the Charter. Therefore, we hold that any temporary employee on the payroll of the city of Cleveland for more than 90 days without being tested and certified by the Civil Service Commission is illegally on the payroll, and any payment made by the Treasurer to that person is contrary to law.

## IV.

The last issue to be resolved concerns the status of temporary employees who have not been tested and certified by the Civil Service Commission but who have been on the payroll for more than two years.

The trial court ruled in its December 31, 1974, judgment that such employees do have permanent civil service status because of R. C. 124.271, which provides in substance that any employee in the classified service of a city, who is appointed provisionally to fill a vacancy and who remains

in that status for a period of two years of continuous service in the same classification during which period no competitive examination is held, becomes a permanent appointee in the classified service at the conclusion of the two year period.

In order to resolve this issue, we must determine the relationship between Sections 130 and 135 of the Charter and R. C. 124.271, and whether R. C. 124.271 controls.

Article XVIII, Sections 3 and 7 of the Ohio Constitution provide that municipalities shall have authority to exercise all powers of local self-government and may adopt a charter for their government and exercise all such powers pursuant to that charter of local self-government. Further, Article XV, Section 10 of the Ohio Constitution provides in effect that all public employees of this state shall be in the classified service. Pursuant to these provisions the city of Cleveland did adopt a Charter, which contains Chapter 27, Sections 124 through 142, establishing the civil service or classified service for the city of Cleveland.

As noted above, Section 130 of the Charter provides that eligible lists shall be created by the Civil Service Commission but in the absence of an eligible list any position may be filled temporarily without a test for a period not exceeding 90 days. In order to obtain permanent civil service status an employee must take an examination, pass it and be certified and placed on an eligible list.

Because Cleveland is a Charter city and the subject of civil service is a matter of local self-government, Sections 130 and 135 govern the employment and status of temporary employees and R. C. 124.271 is not applicable. See State, ex rel., v. Phillips (1958), 168 Ohio St. 191, 196. Therefore, temporary employees on the payroll more than two years without being tested and certified do not obtain permanent civil service status. The trial court erred in ruling that any such temporary employees attain permanent status and the cross-appeals raising this issue are well taken.

In their cross-appeal, the appellees also assign as error that the trial court did not hold that members of the police

and fire departments cannot be laid off until all temporary employees in excess of 90 days are first laid off. The effect of this assignment of error is that all illegal temporary employees must be laid off before classified employees are laid off.

This assignment of error is best answered by our decision that Section 130 of the Charter provides that a temporary employee may be hired without tests for a period not exceeding 90 days and that Section 135 of the Charter mandates that the Treasurer shall not pay, nor shall the Commissioner of Accounts issue a voucher, for the payment of any salary or compensation to any person holding a position in the classified service, unless the payroll or account of such salary or compensation shall bear the certificate of the Civil Service Commission that the persons named therein have been appointed or employed and are performing service in accordance with the civil service provisions of the Charter and the rules established thereunder. This is the law, and it should be followed by the city administration and the Civil Service Commission.

As to the assignments of error of the city of Cleveland et al.: assignment of error one in regard to the trial court's jurisdiction in granting injunctive relief is not well taken; assignments of error two, three and four, which were considered together and deal with the Mayor's authority to lay off policemen and firemen are well taken; assignments of error five and six, which were considered together, and deal with the status of temporary employees, are not well taken.

As to the cross appeal of Jack Gannon et al., assignments of error one and three, which were concerned with temporary employees and were considered together, are well taken. Assignment of error two, which raises the issue of a taxpayer's action, is not well taken because this issue was not raised or decided by the trial court.

As to the assignments of error of the Cleveland Fraternal Order of Police, Lodge No. 8, in their cross appeal, in which both assignments of error deal with the subject of temporary employees, and were considered together, both assignments of error are well taken.

The city of Cleveland et al. made several arguments in support of assignments of error two through six, in which they contended that federal laws relating to availability of federal funds for the city and the federal Civil Rights Act be considered in determining the priority of layoffs of city employees and in deciding the fate of untested temporary employees on the city payroll for more than 90 days. These arguments are not relevant to the issues raised in this appeal and will not be considered and discussed.

While we have decided this case on fundamental legal issues, we recognize the hardship to the city if all illegal temporary employees are summarily dismissed, and we also recognize the hardships of administering the city of Cleveland without some critical and necessary temporary employees who may be on the payroll more than 90 days without being tested and certified. However, this issue can best be resolved by the trial court within its authority upon a showing by the city which employees are actually necessary for the effective administration of the city. But all of the Charter, ordinances and civil service regulations should be complied with as expeditiously as possible. This case is reversed and remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed.*

DAY and CORRIGAN, JJ., concur.