MCNEA ET AL., APPELLEES, *v.*
VOINOVICH, MAYOR, ET AL., APPELLANTS.

(No. 81-1108—Decided May 26, 1982.)

118

*Fink, Greene & Hennenberg Co., L.P.A.,* and *Mr. Murray D. Bilfield,* for appellees.

*Mr. Thomas E. Wagner,* director of law, *Mr. Mark I. Wallach* and *Ms. Marilyn G. Zack,* for appellants city et al.

*Mr. Malcolm C. Douglas,* for appellant new-party defendants.

*Per Curiam.* This appeal presents two issues for decision. The first is whether the proposed layoffs violated the Cleveland city charter (charter), specifically Sections 130 and 135 thereof. The second is whether the proposed layoffs jeopardized the city's health, safety, morals, and welfare.

The Court of Appeals relied on *Gannon* v. *Perk* (1976), 47 Ohio App. 2d 125 (hereinafter *Gannon* I), to support its ruling on the charter question. The court interpreted *Gannon* I as finding that the Cleveland city charter "prohibited the City from retaining temporary employees in excess of ninety days

unless they became regular appointments by competitive examination * * * ." *Gannon* I, however, was appealed to this court, which reversed the Court of Appeals in part on procedural grounds in *Gannon* v. *Perk* (1976), 46 Ohio St. 2d 301 (*Gannon* II). In *Gannon* II this court expressly reserved the question of "whether employment of the temporary employees * * * violated the provisions of the Charter of the city of Cleveland." *Id.* at 312, fn. 3. Nevertheless, the Court of Appeals' reliance on the substantive interpretation of the city charter in *Gannon* I is questionable in light of language used by this court in *Gannon* II. We stated the following in *Gannon* II at pages 312-313.

"In *State, ex rel. Buckman,* v. *Munson* (1943), 141 Ohio St. 319, 326, the court concluded that public employees may be laid-off for reasons of economy 'notwithstanding statutory or charter provisions to the effect that no employee in the classified service shall be removed except for cause * * * , the view * * * being that such statutory or charter provisions * * * are not intended to restrict the public authorities in their efforts to effect necessary or desirable economies.'

"The reasoning of the court in *Munson* applies as well to the cause at bar. Lack of funds induced when projected income falls below anticipated expenses is a legitimate basis for laying off civil service employees, including safety personnel, so long as such layoffs are made in conformity with law. In the instant case, then, the issue becomes whether the layoff of policemen and firemen was made in conformity with the ordinances, charter provisions, and civil service rules of the city of Cleveland.

"The charter and ordinances of the city do not establish a mandatory priority for layoffs of municipal employees due to reasons of economy. Therefore, the power to lay off municipal employees must repose within the sound discretion of the mayor of the city, as its chief executive officer, to be exercised in accordance with law."

The principal difficulty in accepting the conclusions of the courts below is, to use appellants' (city of Cleveland *et al.*) phrase, the failure "to recognize the lack of any legal or logical nexus between the allegations relating to the status of persons holding temporary appointments in the absence of eligible lists

for their classifications and the injunctive relief requested by plaintiffs." The relationship, if any, between the allegedly improperly retained temporary employees and the layoff notices issued to the 53 police officers is tenuous. (The *Gannon* I court recognized as much, stating in a journal entry clarifying its opinion that the matters of police layoffs and the status of temporary employees were "independent and unrelated issues.")

Appellees are correct in asserting that the city charter Section 130 establishes a 90-day period for untested temporary employees and that Section 135 precludes payment absent "the certificate of the Civil Service Commission that the persons named therein have been appointed * * * in accordance with the civil service provisions * * *." Appellants argue, however, that "[t]he proper remedy of taxpayers or other persons aggrieved by the Civil Service Commission's failure to timely test within 90 days is an order compelling a test. * * * [N]either the failure of the Civil Service Commission to meet that testing deadline nor the failure of an aggrieved party to seek such an order has any legal effect on the status of a temporary appointee." In other words, even if the city has not precisely complied with its own civil service regulations, such non-compliance is irrelevant in the context of the instant case. The status of the 90-day-plus untested temporary employees as employees is unchanged; they are still part of the city's civil service so long as they continue to do their jobs. What appellees herein have attempted to do, and what the courts below acquiesced in is the bootstrapping of an alleged violation regarding temporary employees into a vested right inuring to permanent employees in times of fiscal distress.

We reject the layoff priority scheme fashioned by the courts below. Sections 130 and 135 of the city charter do not establish, directly or indirectly, layoff priorities.[2] Therefore,

---

[2] As we noted in *Gannon* II, *supra,* at page 313, the only section of the charter that mentions layoffs is Section 127, which states in pertinent part: "The civil service commission shall make * * * rules for the * * * lay-off * * * of city officials and employees in the classified service. * * * " Civil Service Commission Rule 8.20 deals with layoff priority and establishes the following procedure:

"Whenever it becomes necessary to reduce the working force in a classification in any division of the city service, the appointing authority may lay off any appointee in such classification; provided however, that where two or more persons are employed in a classification, they shall be laid off in the inverse order of their appointment in such

unless and until the city chooses to amend its charter or otherwise legislate on the matter of layoff priorities, the power to lay off municipal employees in a financial emergency "must repose within the sound discretion of the mayor * * *." *Gannon* II, *supra.*

We now turn our attention to the second issue raised in this appeal. As previously noted, the trial court found that the proposed layoffs of 53 police officers jeopardized the city's health, safety, morals, and welfare. As a matter of law, we cannot accept the trial court's conclusions regarding the effect of the proposed layoffs on the city's health, safety, morals, and welfare. The proposed layoffs contemplated removal of one experienced officer and 52 rookies who had recently completed training at the Police Academy. Appellants plausibly assert that "[f]or a municipality in virtual bankruptcy, the layoff of 53 officers * * * from a police force of 1871 does not constitute the *gross* abuse of discretion which would warrant the trial court's stripping the Mayor of his vested authority." We agree with appellants that the contemplated layoffs, which were predicated on the city's exigent financial circumstances, did not constitute a gross abuse of discretion. Unquestionably, the layoffs would have had an adverse effect on the police department's ability to serve the public. Nevertheless, the record does not support the conclusion that the negative impact of this relatively modest number of layoffs would have been so severe as to result in the "functional paralysis" of the police department envisaged by the trial court.

The trial court's finding on the safety issue and the Court of Appeals' summary affirmance thereof is an expedient to avoid this court's holding in *Gannon* II, at page 313, that "the Charter of the city of Cleveland does not confer upon its safety forces a preferred priority over other civil service employees in the event layoffs are necessitated by reasons of economy." The rule of *Gannon* II is susceptible of evasion if trial courts routinely find that laying off safety personnel jeopardizes a community's health, safety, morals, and welfare.

For the reasons hereinbefore stated, the judgment of the Court of Appeals is reversed.

---

classification, unless otherwise first approved by the commission for good cause shown * * * ."

*Judgment reversed.*

W. Brown, Acting C. J., Keefe, Sweeney, Locher, Holmes, C. Brown and Krupansky, JJ., concur.

Keefe, J., of the First Appellate District, sitting for Celebrezze, C. J.