**SMITH et al., Appellants,**

v.

**CITY OF CINCINNATI et al., Appellees.**

[Cite as *Smith v. Cincinnati* (1993), 85 Ohio App.3d 13.]

Court of Appeals of Ohio,
Hamilton County.

No. C-910792.

Decided Jan. 6, 1993.

**14**

*Roger R. Chacksfield,* for appellants,

*Fay D. Dupuis,* City Solicitor, and *Mark C. Vollman,* for appellees Cincinnati and Scott Johnson, Cincinnati City Manager.

---

*Per Curiam.*

On May 5, 1987, plaintiffs-appellants, nine police officers holding ranks below that of sergeant in the Cincinnati Police Division,[1] filed a complaint for declaratory judgment in the Hamilton County Court of Common Pleas alleging that defendants-appellees had violated certain provisions of the consent decree entered August 13, 1981, in *United States of America v. City of Cincinnati,* Civil No. C–1–80–369, by the United States District Court for the Southern District of Ohio, Western Division. Appellants claimed that as a result of appellees' violations of the consent decree, specifically, the failure lawfully to determine and post a notice of complement, they were denied promotions to the rank of sergeant guaranteed by Ohio's civil service laws. Appellants requested a declaration of "the rights, duties, obligations and status of the parties as related to their individual claims for promotion to the rank of police sergeant in the Cincinnati Police Division." Appellees filed a petition for removal to the federal district court which was granted.

Subsequent to the removal of the case to the federal district court, appellants' original counsel withdrew and present counsel was substituted. An amended complaint for declaratory judgment was filed alleging (1) violations by appellees of the consent decree; (2) bad faith on the part of appellees in "knowingly, intentionally and illegally" manipulating the sergeants' complement; (3) violations by appellees of Ohio's civil service laws; and (4) violations by appellees of R.C. 737.05. Appellants requested a declaration as to their promotional rights under the consent decree and Ohio's civil service laws, the legality of appellees' reduction of the sergeants' complement, the proper number of officers to be included in the complement, and the "person, persons or source" authorized to establish and to alter the complement pursuant to R.C. 737.05.

Following a bench trial, the district judge dismissed appellants' complaint for declaratory judgment, finding that appellees had not violated the consent decree and that the litigation was "essentially a collateral attack upon the consent decree." Appellants appealed to the United States Court of Appeals for the Sixth Circuit (1991), 929 F.2d 702, which remanded the case to the district court for the resolution of certain questions of state law which had not been addressed. The state-law issues included (1) whether the notice of complement was posted as required by the consent decree; (2) what effect the failure to post the notice of

---

1. Since the commencement of this action, seven appellants have been promoted to the rank of sergeant.

complement would have on compliance by appellees with Ohio's civil service laws; (3) what entity has the authority to establish the sergeants' complement; (4) what method was used to set the complement at one hundred fifteen on November 3, 1982; (5) whether the method used to set the complement violated state law; and (6) whether appellees violated R.C. 124.37, which requires demotion through rank rather than attrition to abolish positions. Upon remand, the district court returned the case to the Hamilton County Court of Common Pleas for resolution of the remaining state-law issues.

Following the return of the case to the Hamilton County Court of Common Pleas, the court framed the remaining state-law issues as follows:

"(1) Whether the City properly set the complement for the number of sergeants at 115 on November 3, 1982; and

"(2) Whether the personnel actions taken in regard to the sergeants' complement by the City were valid."

Appellees filed a motion for summary judgment, which the trial court granted. The court's judgment entry states:

"The City properly set the complement for the rank of sergeant for all times relevant per the consent decree which clearly controls the subject, and to which the FOP agreed. Even if the City failed to post the notice of complement in some locations, such failure has no effect on the setting of the complement.

"It is the Court's view that the City's personnel actions in regard to the sergeants' complement were authorized by the consent decree and not violative of Ohio civil service law. The Court finds, as a matter of law, that the City acted in accordance with the existing law including *Hungler v. Cincinnati* (1986), 25 Ohio St.3d 338 [25 OBR 392, 496 N.E.2d 912] as interpreted by the First District Court of Appeals for Hamilton County and as it existed at the time of their actions."

Appellants timely appealed. Appellants' sole assignment of error alleges the trial court erred in granting appellees' motion for summary judgment.

At the time the consent decree was entered, the sergeants' complement was one hundred twenty-seven. Subsequently, appellees prepared a notice of complement setting the sergeants' complement at one hundred fifteen effective November 3, 1982. The number of sergeants was allowed to decrease through attrition to one hundred fifteen by July 28, 1985. On August 6, 1985, an eligibility examination was held. The sergeants' complement was determined to be full on September 10, 1986, and no further promotions were made. As of that time, the complement had been raised by appellees to one hundred twenty. Appellants allege that the sergeants' complement was illegally reduced by appellees and that the correct complement of sergeants was one hundred twenty-seven. Therefore,

appellants allege, the next seven people in line plus two minority "double fills," the nine plaintiffs-appellants, should have been promoted.

Appellants argue that the sergeants' complement was unlawfully set in violation of R.C. 737.05 and the Charter of the city of Cincinnati. R.C. 737.05 provides in pertinent part:

"The police department of each city shall be composed of a chief of police and such other officers, patrolmen, and employees as the legislative authority thereof provides by ordinance."

The Charter of the city of Cincinnati, Section 5, Article V, provides for seven ranks in the police force: Chief, Assistant Chief, Captain, Lieutenant, Sergeant, Patrolman and Recruit. Further, the charter vests all legislative powers in the city council pursuant to Section 1, Article II. Section 3, Article V of the charter states in part:

"Except as provided in this charter the council shall have no power to modify the provisions of the laws of the state of Ohio now or hereafter in effect relating to the civil service and civil service commission."

Normally, the authority to create and fund the ranks in the police department rests in the legislative authority of the city. See *State ex rel. McClure v. George* (1945), 145 Ohio St. 187, 30 O.O. 378, 61 N.E.2d 87; *Atwood v. Judge* (1977), 63 Ohio App.2d 94, 17 O.O.3d 289, 409 N.E.2d 1022. The Ohio Supreme Court has held that a position in the police or fire department is created only when the number of positions in that rank is increased by ordinance and council makes a specific appropriation to fund the position. *State ex rel. Pell v. Westlake* (1980), 64 Ohio St.2d 360, 18 O.O.3d 514, 415 N.E.2d 289; *State ex rel. Finn v. Garfield Hts.* (1973), 34 Ohio St.2d 5, 63 O.O.2d 3, 295 N.E.2d 197. The power to create a civil service position includes the power to abolish it. *Weston v. Ferguson* (1983), 8 Ohio St.3d 52, 8 OBR 523, 457 N.E.2d 818.

In the case *sub judice*, Captain Michael Hines, who was assigned to the police personnel section of the Cincinnati Police Division, testified that the notice of complement which was to be posted by July 1, 1982, designated one hundred fifteen as the authorized sergeants' complement effective November 3, 1982. That number was given to Captain Hines by Carl Lind, the head of the police division office of budget and coordination. Captain Hines testified that one hundred fifteen was a projected figure, and that the actual number of sergeants in the complement could change throughout the budget process. For example, the sergeants' complement which was initially projected at one hundred fifteen was actually funded for one hundred twenty sergeants.

David Rager, Assistant Director of Safety for the city of Cincinnati, testified that he is responsible for presenting a balanced budget to the city manager and,

ultimately, to city council. A summary budget form, which shows the total number of positions that would be funded based upon a "base budget" recommended by the city manager, is made available to council for review. A "discretionary budget" is also prepared. The city manager recommends the amount of funds to be spent on the police division, but council makes the final decision on the amount to be included in the budget. Council must also decide whether to fund the items listed in the "discretionary budget" through additional revenue.

Rager testified that council must approve the structure of the Cincinnati Police Division in terms of funding a certain number of officers in each rank. For example, if the police chief wishes to fund one more lieutenant position and two fewer sergeant positions, he must go to council for the authority to change the structure even though the change may not have an impact on the budget.

■ The record establishes that Cincinnati City Council ultimately sets the budget and structure, including the number of positions funded, for the Cincinnati Police Division. We hold that council has not illegally delegated its authority under R.C. 737.05 and the Charter of the city of Cincinnati to create and fund the ranks of the Cincinnati Police Division.

Appellants also argue that the sergeants' complement, set at one hundred twenty-seven in the consent decree, was illegally reduced by appellees in violation of R.C. 124.44 and 124.37. Appellees argue that the complement was lawfully reduced pursuant to the consent decree, which provides for "double filling" of positions in the complement to ensure that twenty-five percent of those promoted would be female or minority candidates. The pertinent provisions of the consent decree state:

"For the purpose of establishing a list of qualified candidates for promotion to the rank of police sergeant, the following procedures shall be followed:

"1. A promotional examination for the rank of police sergeant shall be administered on September 1, 1981 and September 11, 1981 and thereafter, in accordance with the provisions of Chapter 124, Ohio Revised Code, the Charter of the City of Cincinnati and the Ohio Constitution.

" * * *

"3. Subsequent to the release of the first promotion eligible list for the rank of police sergeant in accordance with the terms of this Decree, the required complement of police sergeants shall be determined by the City defendants and a 'Notice of Complement' shall be prepared and posted on all bulletin boards in all police locations no later than one hundred twenty (120) days prior to the expiration of the existing promotion eligible list. Said 'Notice of Complement'

shall set the authorized number of police sergeants effective the day after the expiration of the current eligible list.

"4. * * * Any position established and funded pursuant to the provision of this Decree in addition to those in the established complement shall be considered double fill complement positions in existence at the time of the release of the 'Notice of Complement' by the City defendants; provided, however, that after the expiration of any existing eligibility list, a vacancy for promotion purposes shall not exist in the complement until such time as the total number of persons holding the rank of sergeant falls below the complement, established by the 'Notice of Complement.'"

We do not agree with appellees' argument that the consent decree controls the manner in which the sergeants' complement is to be set. The consent decree states only that appellees shall determine the required complement of sergeants; it does not set forth the procedure to be followed by appellees in setting the complement. Therefore, we must look to state civil service law to determine whether appellees improperly reduced the sergeants' complement.

R.C. 124.44 provides in part:

"Whenever a vacancy occurs in the position above the rank of patrolman in a police department, and there is no eligible list for such rank, the municipal * * * civil service commission shall, within sixty days of such vacancy, hold a competitive promotional examination. After such examination has been held and an eligible list established, the commission shall forthwith certify to the appointing officer the name of the person receiving the highest rating. Upon such certification the appointing officer shall appoint the person so certified within thirty days from the date of such certification. If there is a list, the commission shall, where there is a vacancy, immediately certify the name of the person having the highest rating, and the appointing authority shall appoint such person within thirty days from the date of such certification."

R.C. 124.37 in part states:

"When it becomes necessary in a police * * * department, through lack of work or funds * * * to reduce the force * * * the youngest employee in point of service shall be first laid off. * * * When a position above the rank of patrolman in the police department * * * is abolished, and the incumbent has been permanently appointed, he shall be demoted to the next lower rank and the youngest officer in point of service in the next lower rank shall be demoted, and so on down until the youngest person in point of service has been reached, who shall be laid off."

David Rager testified that the sergeants' complement was reduced for lack of funds from one hundred twenty-seven, the number set forth in the consent decree, to one hundred twenty through attrition at a time when no "double fills"

were available and no eligibility list existed. Rager stated that appellees were following our decision in *Hungler v. Cincinnati* (July 3, 1985), Hamilton App. No. C–840507, unreported, 1985 WL 8908, which held that positions in the higher ranks of the police division could be eliminated through attrition for reasons of "economy and efficiency" without laying off the least senior person. That decision was subsequently overturned by the Ohio Supreme Court in *Hungler v. Cincinnati* (1986), 25 Ohio St.3d 338, 25 OBR 392, 496 N.E.2d 912.

"The abolishment of a classified civil service position above the rank of patrolman in the police department for lack of work or funds, or for causes other than those outlined in R.C. 124.34, must be accomplished in conformance with R.C. 124.37."[2] *Id.* at 344, 25 OBR at 399, 496 N.E.2d at 917. R.C. 124.37 requires that a city which decides to abolish a higher ranking police position because of lack of work or funds must do so through the demotion of an incumbent, accompanied by a series of demotions in the lower ranks which ultimately result in the layoff of the least senior member of the police division. *Id.* Upon the occurrence of a vacancy in a position above patrolman in a police division, R.C. 124.44 is mandatory and the vacant position must be filled by appointment before it is abolished pursuant to R.C. 124.37. *Zavisin v. Loveland* (1989), 44 Ohio St.3d 158, 541 N.E.2d 1055. The *Zavisin* court pointed out that pursuant to R.C. 124.37, "an officer permanently appointed to a vacant position pursuant to R.C. 124.44, whose position is later abolished in conformance with R.C. 124.37, resulting in his demotion, has the right to be reappointed to that position should it be recreated within three years or should another vacancy occur within three years of his demotion due to the abolishment of the position." *Id.* at 161, 541 N.E.2d at 1058. Therefore, if the procedures set forth in R.C. 124.37 and 124.44 are followed, seniority rights are not adversely affected. *Id.*

We hold that appellees abolished the seven positions from the sergeants' complement in violation of R.C. 124.37 and 124.44. The proper method to be employed was to promote appellants and then, if a lack of funds or work occurred, to demote through the ranks, laying off the least senior person in the Cincinnati Police Division. In that way, appellants' seniority rights would be protected.

We reject appellees' argument that they acted properly pursuant to our decision in *Hungler v. Cincinnati* (July 3, 1985), Hamilton App. No. C–840507, unreported, 1985 WL 8908, because that decision had not yet been reversed by the Ohio Supreme Court at the time appellees' actions took place. In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468, the Ohio Supreme Court stated:

---

2. R.C. 124.34 deals with reduction, suspension, removal or demotion of a civil service employee for disciplinary reasons.

"The equal protection clause of the federal Constitution does not assure uniformity of judicial decisions. The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." See, also, *Zagorski v. S. Euclid-Lyndhurst Bd. of Edn.* (1984), 15 Ohio St.3d 10, 15 OBR 8, 471 N.E.2d 1378.

We hold that neither the contractual-rights exception nor the vested-rights exception to the general rule of retrospective application of judicial decisions applies in this case.[3] See *King v. Safeco Ins. Co.* (1990), 66 Ohio App.3d 157, 583 N.E.2d 1051.

Because we hold that appellees abolished the seven positions from the sergeants' complement in violation of R.C. 124.37 and 124.44, appellants' assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for an entry of judgment in favor of appellants, for a determination of damages, and for further proceedings consistent with law and this decision.

*Judgment accordingly.*

SHANNON, P.J., HILDEBRANDT and GORMAN, JJ., concur.

---

3. We point out that the consent decree does not give appellees any vested contractual rights in the procedure which must be used in setting the complement. The manner in which the complement is to be set is determined by Ohio's civil service laws.