TAPO ET AL., APPELLEES, *v.* COLUMBUS BOARD OF EDUCATION, APPELLANT.

[Cite as Tapo *v.* Columbus Bd. of Edn. (1987), 31 Ohio St. 3d 105.]

(No. 86-643—Decided June 24, 1987.)

*Cloppert, Portman, Sauter, Latanick & Foley, Frederick G. Cloppert, Jr., Susanne R. Blatt* and *Frederic A. Portman,* for appellees.

*Bricker & Eckler, Jerry E. Nathan, Charles D. Smith* and *Lawrence H. Braun,* for appellant.

COOK, J. The sole issue presented by the instant appeal is whether a teacher seeking back pay from a school board, as a result of the board's erroneously placing her on its salary schedule, is required to follow the grievance-arbitration procedure of a collective bargaining agreement where the board stipulates that the teacher was qualified for placement in the higher paying category on the salary schedule during the time in question and that the master agreement contains no provision as to the question of retroactivity or statute of limitations relative to correcting an erroneous placement on the salary schedule.

In the instant cause, Section 110.01 of the collective bargaining agreement between the board and the Columbus Education Association provided:

"During the course of this Agreement, problems may arise concerning the interpretation or application of the policies, rules and procedures of the Board or the provisions of this Agreement. When such problems arise, an attempt should be made to settle them informally by the principal and teacher or teachers involved. A problem which cannot be resolved informally will be processed as a grievance."

The board contends the teachers' claim for back wages for the years prior to the six-year period for which the board offered to make up salary shortages constitutes a grievance and must be submitted to arbitration by them under the master agreement.

However, in the instant cause, the parties, in the court below, stipulated that Tapo, since 1969-1970, and Wilcox, since 1971, have been qualified for placement in the category "B.S. and 150 hours" on the salary schedule. The parties further stipulated that the master agreement contains no provision as to retroactivity or the statute of limitations "[as] to correcting a teacher's erroneous placement on the Board's adopted salary schedule." Thus, there was no grievance "* * * concerning the interpretation or application of the policies, rules, and procedures of the Board or the provisions of this Agreement * * *," to be submitted to arbitration.

Since there was no dispute between the parties as to any of the board's policies, rules or procedures or the provisions of the master agreement, and the board refused to pay the teachers the salary for which they were qualified, despite its written contracts with them to do so, the teachers properly filed a legal action against the board for breach of contract for said back pay. The claim of the teachers was subject to any applicable legal or equitable defense. In the instant cause, the court found the defenses offered by the board to be without merit. The board has not made the court's

ruling as to said defenses, other than the defense of failure to proceed under the grievance-arbitration provision of the collective bargaining agreement, the basis of alleged error.

We conclude that the trial court did not err in deciding Tapo and Wilcox did not have to exhaust the grievance-arbitration procedures set forth in the collective bargaining agreement between the board and the Columbus Education Association as to the collection of the back pay allegedly due them.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., MARKUS and WRIGHT, JJ., dissent.

COOK, J., of the Eleventh Appellate District, sitting for LOCHER, J.

MARKUS, J., of the Eighth Appellate District, sitting for HOLMES, J.

MARKUS, J., dissenting. The teachers in this case are attempting to avoid the exclusive grievance procedures in their master collective bargaining agreement by mislabeling their claims. They purport to seek "back pay" because they did not assert their grievances in the proper forum when they were timely. They conveniently characterize their untimely and procedurally barred claims as new claims for back benefits. In my view, this court should require the parties to comply with their agreement for a prescribed alternate dispute resolution mechanism.

When the plaintiff-teachers received the challenged individual contracts and each resulting underpayment, their collective contract established a two-step grievance procedure. If that procedure failed to resolve their disputes satisfactorily, the contract required the parties to accept binding arbitration, rather than filing a lawsuit. Their contract conformed with most modern collective bargaining agreements which mandate exclusive, expeditious, inexpensive, and uncomplicated procedures to resolve labor-management disagreements.

The teachers' collective bargaining agreement at Section 110.01 set forth the broad scope of the grievance mechanism by its definition of grievances:

"During the course of this Agreement, problems may arise concerning the interpretation or application of the policies, rules, and procedures of the Board or the provisions of this Agreement. When such problems arise, an attempt should be made to settle them informally by the principal and teacher or teachers involved. A problem which cannot be resolved informally will be processed as a grievance."

Manifestly, a complaint that the board has misclassified a teacher for salary purposes is a grievance within that definition. Cf. *Communications Workers of America* v. *United Telephone Co.* (N.D. Ohio 1973), 74 C.C.H. Labor Cases, Paragraph 10,212.

The first step of the grievance procedure required teachers to present any complaint for negotiation with their principal within ten school days after the contested incident.[1] The principal had to conduct a hearing within four school days, and to decide the grievance in four more school days. A representative from the teachers' association could assist the teacher at that hearing.

For the second step of the grievance procedure, the teacher could request the superintendent to review the principal's decision and conduct a new hearing.[2] Here again, the contract specified the time allowed to request that review, to conduct the hearing, and to decide the grievance.

The contract further provided in paragraph 110.03: "The failure of a grievant to appeal any decision to the next Step within the time set forth for such appeal shall constitute a waiver of the right of further appeal, and a final disposition of the grievance shall be made on the basis of the last decision given. Any of the time limits established in this Grievance Procedure may be waived by mutual agreement of the parties."

---

[1] Section 110.02 of the parties' collective bargaining agreement provides:

"Each grievance shall be processed in the following manner:

"*Step 1*

"A.   Within ten (10) school days after the occurrence of the incident which is the subject of the grievance, the teacher involved will reduce the grievance to writing, on a form provided by the Board, and will present it to the building principal. Upon receipt, the principal will place a copy of the grievance in the [teachers'] Association Building Representative's school mailbox.

"B.   Within four (4) school days after the grievance is submitted, the building principal will discuss the grievance with the teacher involved and attempt to resolve it. If the teacher wishes, the teacher may be accompanied at such meeting by a representative of the Association. At the request of an individual grievant, the Step 1 hearing shall involve only the grievant and the principal. The principal may be accompanied by another administrator at Step 1 except when only the grievant and principal are involved. The role of the accompanying administrator in the hearing will be to advise and counsel with the principal. The principal will conduct the hearing.

"C.   Within four (4) school days after this meeting, the principal will state the decision in writing on the grievance form and provide a copy to the grievant."

[2] "*Step 2.* If the grievant is not satisfied with the decision concerning the grievance made by the principal at Step 1, the teacher may, within four (4) school days of receipt of such decision, request the principal to forward the grievance to the Superintendent. Upon such request being made, the principal will forward the grievance to the Superintendent within two (2) school days. The Superintendent shall schedule a hearing within ten (10) school days of receipt of the grievance, and shall notify the grievant and the Association of the time and place of such hearing. Within five (5) school days after such hearing, the Superintendent, or the Superintendent's designated representative at such hearing, shall notify the grievant of the decision in writing."

If the teacher is dissatisfied with the superintendent's decision, the teachers' association can require the board to submit the dispute to binding arbitration.[3]

When Tapo received her individual 1969-1970 contract, she could have immediately complained that it mistakenly classified her as "B.S." instead of "B.S. and 150 hours." When she received each paycheck pursuant to that misclassification, she could have filed her grievance. She could have raised that issue under the established grievance procedure for each subsequent contract and each subsequent paycheck until the board corrected her classification.

Likewise, when Wilcox received her individual 1971-1972 contract and each resulting paycheck, she could have asserted her grievance promptly. Similarly, she could have invoked the grievance procedure for each subsequent individual contract and each subsequent paycheck which misclassified her.

In fact, Tapo filed a grievance more than six years after the last disputed underpayment, then abandoned it prior to arbitration. Wilcox never filed one. Instead, Wilcox joined Tapo in this lawsuit. They alleged that they now seek "back pay" for which the collective agreement provides no dispute mechanism. Cf. *Local Lodge No. 1424* v. *N.L.R.B.* (1960), 362 U.S. 411, 415-416 (labor board must challenge an unauthorized agreement within legally allowable time and cannot extend that time by arguing that its further enforcement is a continuing unfair practice).

The parties contractually selected an appropriate forum for their disputes. The court should not permit either of them to disregard their agreement. R.C. 2711.01; *Mahoning Cty. Bd. of Mental Retardation* v. *Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St. 3d 80, 83-84, 22 OBR 95, 98, 488 N.E. 2d 872, 875.

The teachers argue that they had no duty to use a grievance procedure which culminates in arbitration, because the board now admits their claims. They contend that there is nothing to arbitrate. However, the board has every right to insist that the teachers present their claims at the time and in the manner which their agreement specified.

If the teachers can ignore the grievance mechanism when the board later admits their claims, they might also disregard those mechanisms

---

[3] Section 111.01 of their agreement provides:

"If a grievance is not satisfactorily resolved at Step 2 of the Grievance Procedure, above, the Association may make a written request for arbitration within fourteen (14) calendar days after receipt of the decision of the Superintendent or his/her designated representative."

Sections 111.02 through 111.07 provide detailed arbitration procedures. Section 111.05 provides in pertinent part: "The decision of the arbitrator shall be submitted to the Board and the Association and, subject to law and the foregoing stipulations of this Agreement, shall be final and binding in respect to the interpretation, meaning, or application of any provision of this Agreement or of any existing school policies. * * *"

when they can prove their claims. Whether their claims have merit has nothing to do with the forum or the time in which they must present them.

A plaintiff cannot prevail when limitations bar his claim, simply because the defendant finally acknowledges its merit. Cf. *Dent* v. *Van Winkle* (1987), 30 Ohio St. 3d 80, 30 OBR 228, 507 N.E. 2d 345, at paragraph two of the syllabus. A claimant cannot choose any forum when a valid contract restricts the parties to another forum, simply because the adverse party ultimately admits that the claim has merit. Cf. *Noernberg* v. *Brook Park* (1980), 63 Ohio St. 2d 26, 17 O.O. 3d 16, 406 N.E. 2d 1095, syllabus.

Nor does the board's voluntary compensation for some previous underpayments change the result here. Apparently the board perceived that the teachers' claims were statutory under R.C. 3317.14, rather than contractual, so they remained enforceable in court for six years after the underpayments. See R.C. 2305.07. Hence, it chose to pay the difference between the salary owed and the salary paid for the preceding six years. The board did not thereby lose its right to require the teachers to comply with the contractual grievance procedure for any remaining claims.

We should enforce the parties' valid contract which provides an exclusive method for resolving their disputes. Consequently, we should reverse the judgments below, and enter judgment for the defendant school board.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.