MAYFIELD HEIGHTS FIRE FIGHTERS ASSOCIATION,
LOCAL 1500, I.A.F.F., et al., Appellants,

v.

DeJOHN, Mayor, et al., Appellees.

[Cite as *Mayfield Hts. Fire Fighters Assn., Local 1500,
I.A.F.F. v. DeJohn* (1993), 87 Ohio App.3d 358.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62331.

Decided April 26, 1993.

Joseph W. Diemert, Jr. & Associates Co., L.P.A., Joseph W. Diemert, Jr., and Thomas M. Hanculak, for appellants.

Vincent A. Feudo, Director of Law, for appellees.

PORTER, Judge.

Plaintiffs-appellants Mayfield Heights Fire Fighters Association, Local 1500, I.A.F.F. ("the Union") and four individual fire fighters employed by the Mayfield Heights Fire Department appeal from the trial court's order granting defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. Defendants-appellees are the Mayor and Civil Service Commission of Mayfield Heights. Plaintiffs, filing suit as taxpayers, challenged the legality of the Mayor's action in appointing a fireman from the ranks to serve as Acting Lieutenant, later becoming permanent under a Civil Service Rule amendment, when one of the plaintiff firemen would be entitled to the promotion based on Civil Service examinations and standing on the eligibility lists. Although we do not have the benefit of an opinion, the trial court presumably held that it did not have subject matter jurisdiction because the plaintiffs did not exhaust their remedies under a collective bargaining agreement entered into under R.C.

Chapter 4117, the Public Employees' Collective Bargaining Act. We find that the trial court was correct in its ruling and we affirm the dismissal below.

This case arose out of a vacancy which occurred in the Mayfield Heights Fire Department for the rank of Lieutenant on or about September 1, 1988. On January 22, 1989, the Mayor temporarily promoted fire fighter Sal Grano to the rank of Acting Lieutenant. On May 4, 1989, the Civil Service Commission of Mayfield Heights amended its rule forbidding temporary appointments lasting longer than ninety days. Section 8, Rule VI, now reads:

"Emergency or temporary appointments may be made by the Mayor when the good of the service or the welfare of the public makes it necessary in the judgment of the Mayor to do so. Notice however must be given to the Commission with the reasons for making such provisional appointments and such reasons must be satisfactory to the Commission. If such temporary employee holds said position continuously for one (1) year then that employee shall become permanent in nature and so certified as such."

On or about May 7, 1990, Mayor Ross C. DeJohn appointed Sal Grano to the permanent position of Lieutenant pursuant to the above rule without a written, competitive examination.

At all times pertinent, relations between the city of Mayfield Heights and the Union, the exclusive representative for the firemen, were governed by a collective bargaining agreement ("Agreement"). The Agreement, covering the period of January 1, 1988, through December 31, 1990, contains a provision concerning the subject of promotions. This provision states:

"*Section 14.1.* All promotions in the Fire Department shall be made by competitive examination which shall be impartial and shall be handled in the manner provided for by the Civil Service Commission through its rules and regulations as provided in the City Charter."

Further, if a bargaining unit employee, such as any one of the individual plaintiffs, determines that there has been "a breach, misinterpretation or improper application of [the] Agreement," he has access to the grievance procedure provided at Article IX. The procedure sets forth a detailed four-step process for peaceful resolution of grievances and culminates in binding arbitration. Sections 9.3–9.6, Article IX. All grievances must be brought within thirty days after the date of the alleged action or event giving rise to the grievance. Section 9.5.

On or about June 18, 1990, the plaintiffs, by letter, demanded that the Law Director of the city of Mayfield Heights file an action against the city, its appointing authority and the civil service commission, pursuant to R.C. 733.59 and 124.63, to enjoin them from violating the Ohio Constitution, the Ohio Revised Code, the city charter and the rules and regulations of the civil service commis-

sion. The plaintiffs also demanded a mandamus requesting the civil service commission to conduct an investigation into the alleged illegal promotion of fire fighter Sal Grano. The letter demanded a positive response by June 19, 1990, the next day. The instant lawsuit was filed on June 20, 1990.

The complaint (1) sought a declaratory judgment to establish the rights of the plaintiffs fire fighters, holding the promotion of Grano invalid and ordering a competitive examination; (2) sought a permanent injunction to revoke Grano's appointment, requiring conduct of competitive examinations and an order directing a Civil Service Commission investigation; and (3) invoked an administrative appeal by way of R.C. Chapter 2506.

We will address the plaintiffs' assignments of error in the order asserted.

"I. The trial court erred in granting appellees' motion to dismiss pursuant to Civ.R. 12(B)(1) and 12(B)(6)."

Plaintiffs claimed that the promotion of a fire fighter to the rank of Lieutenant in disregard of a civil service competitive examination and eligibility list was illegal and improper. Defendants maintain that the matter was subject to the grievance procedures in the collective bargaining agreement between the Union and Mayfield Heights and that the trial court correctly determined it did not have jurisdiction to entertain the action. These contentions squarely raise the tensions between civil service requirements and the grievance procedures encouraged by the Public Employees' Collective Bargaining Act.

■ R.C. Chapter 4117, the Ohio Public Employees' Collective Bargaining Act, is comprehensive legislation enacted in 1984 to eliminate the discord and strife occasioned by unlawful strikes by public employees. *Rocky River v. State Employment Relations Bd.* (1989), 43 Ohio St.3d 1, 19–20, 539 N.E.2d 103, 118–120. R.C. 4117.10(A) provides as follows:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117 of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure."

"The provisions of a collective bargaining agreement entered into pursuant to R.C. Chapter 4117 prevail over conflicting laws, including municipal home-rule Charters enacted pursuant to Section 7, Article XVIII of the Ohio Constitution, except for laws specifically exempted by R.C. 4117.10(A)." *Cincinnati v. Ohio Council 8, AFSCME* (1991), 61 Ohio St.3d 658, 576 N.E.2d 745, paragraph one of

the syllabus. This applies equally to permissive as well as mandatory subjects of collective bargaining encompassed in the agreement. *Id.* at paragraph three of the syllabus. "All matters affecting promotions are appropriate subjects of collective bargaining." *DeVennish v. Columbus* (1991), 57 Ohio St.3d 163, 566 N.E.2d 668, paragraph two of the syllabus.

If, therefore, the subject of promotions is covered by the Agreement at issue, it is subject to the mandatory grievance procedures which must be exhausted before resort to the courts.

Section 14.1, Article XIV, of the Agreement relates to promotions in the Fire Department:

"All promotions in the Fire Department shall be made by competitive examination which shall be impartial and shall be handled in the manner provided for by the Civil Service Commission through its' [*sic*] rules and regulations as provided in the City Charter."

This court has recently addressed the above-quoted paragraph of the Agreement in a mandamus action by a Mayfield Heights fire fighter and determined that it prevails over the terms of R.C. Chapter 124. *State ex rel. Sporar v. Mayfield Hts.* (Aug. 10, 1990), Cuyahoga App. No. 57179, unreported, 1990 WL 118325. After reviewing the current Supreme Court cases on the subject, this court stated as follows, at 9–11:

"*Bardo, Rollins* and [*State ex rel.*] *Clark* [*v. Cleveland Regional Transit Auth.* (1990), 48 Ohio St.3d 19, 548 N.E.2d 940] all demonstrate that the provisions of a collective bargaining agreement must be considered in an action such as this one brought by relator. This consideration should focus first on determining whether the agreement clearly addresses the controverted issue—in this action, the procedure for promotions. If the agreement does address the issue, it is necessary to determine whether R.C. 4117.10(A) requires that any contrary provision of the Revised Code or local laws defer to the collective bargaining agreement. If the issue is not one excepted from the preeminence given to collective bargaining agreements in R.C. 4117.10(A), the agreement is controlling despite any legislation to the contrary.

"In this action, the collective bargaining agreement between respondent city and Local 1500 unequivocally addresses the subject of promotions in Article 9, which provides:

" 'All promotions in the Fire Department shall be made by competitive examination which shall be impartial and shall be handled in the manner provided for by the Civil Service Commission through its' [*sic*] rules and regulations as provided in the City Charter.'

"As was mentioned above, relator asserts that the language 'as provided in the City Charter' requires a specific provision in the charter dealing with promotions. Because there is no such provision, relator argues, the agreement is not controlling and respondents have a clear legal duty to comply with the provisions of the Revised Code requiring the promotion of the person who is first on the eligible list.

"Relator's reading of Article 9 is, however, strained.  That is, Article 9 requires that promotions 'be handled in the manner provided for by the Civil Service Commission through its' [*sic*] rules and regulations as provided in the City Charter.'  Article V, Section 7 of the charter provides, in part:

" 'The Civil Service Commission shall provide by rule for the ascertainment of merit and fitness as the basis for * * * promotion * * *.'

"The civil service commission is, therefore, authorized to set forth rules for promotion under the charter.  The rules which the commission promulgated in 1982 require the commission to certify the names of the top three candidates on the eligible list to the mayor.  As a consequence, the terms of the agreement supersede those of R.C. 124.46 and 124.48 which would automatically require the appointment of the first person on the eligible list.

"Relief in mandamus would, therefore, be inappropriate.  Accordingly, we hold that relator does not have a clear legal right to be promoted to lieutenant nor do respondents have a clear legal duty to certify him for or appoint him to that position.

"Similarly, we cannot find that relator lacked an adequate remedy in the ordinary course of the law."

We find this court's previous rulings to be compelling in the instant case. Furthermore, as noted by the Ohio Supreme Court in *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 98–99, 488 N.E.2d 872, 875–876: "To deny credence and efficacy to these [grievance arbitration procedures] would be, in effect, writing them out of the collectively bargained contract of the parties.  * * * [T]his would defeat the bargain made by the parties and would defeat, as well, the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements."

In *State ex rel. Rollins v. Cleveland Hts.–Univ. Hts. Bd. of Edn.* (1988), 40 Ohio St.3d 123, 124, 532 N.E.2d 1289, 1290, the court rejected a taxpayer's attempt to use the court to secure tenure rights under R.C. 3319.11 which were contrary to the collective bargaining agreement.  The court noted that the provisions of the agreement prevailed over any such tenure rights unless such law falls within one of the exceptions listed in R.C. 4117.10(A).  Further, the

court refused to hear arguments regarding the intent of the parties to the agreement, stating "this argument rests upon an interpretation of the collective bargaining agreement. As such, it is subject to the grievance procedure established by the agreement, including binding arbitration. Rollins could have initiated and processed a grievance without union support. Therefore, Rollins had an adequate remedy at law for resolving that issue. See *State ex rel. Bardo v. Lyndhurst* (1988), 37 Ohio St.3d 106, 112–113, 524 N.E.2d 447, 453–454." *State ex rel Rollins, supra,* 40 Ohio St.3d at 128, 532 N.E.2d at 1294.

Although these plaintiffs sue as taxpayers, each of them had individual rights to process his grievance in accordance with the Agreement. No grievance was filed after the civil service commission amended its rules or after Lieutenant Grano's appointment was made permanent. Clearly, if the plaintiffs' contention is that the promotion of Lieutenant Grano was improper, and not in accordance with the Agreement, a grievance should have been filed by June 7, 1990. Because the grievance procedure was the plaintiffs' exclusive remedy, the trial court lacked jurisdiction and did not err in dismissing this case pursuant to Civ.R. 12(B)(1) and (B)(6).

This assignment of error is overruled.

"II. The appellants, as taxpayers, have an interest in appellees' unlawful execution of the civil service laws and resulting misapplication of municipal funds, and thus have standing to maintain this action."

Plaintiffs base this assignment of error on the predicate that all taxpayers have a public right to enforce civil service rules. We must acknowledge, however, as previously noted, that R.C. Chapter 4117 has broadly reshaped the law governing the relationship between public employers and employees regarding wages, hours, terms and conditions of employment. *Local 4501 v. Ohio State Univ.* (1986), 24 Ohio St.3d 191, 195, 24 OBR 420, 423, 494 N.E.2d 1082, 1086; *State ex rel. Rollins, supra,* 40 Ohio St.3d at 124, 532 N.E.2d at 1290.

Under R.C. Chapter 4117, employees and their employers are now free to bargain away local civil service rules, R.C. Chapter 124 or any other law that might require competitive examination when negotiating a procedure for promotions.

In *State ex rel. Darvanan v. Youngstown* (Jan. 27, 1987), Mahoning App. No. 85 C.A. 131, unreported, 1987 WL 5967, the court approved a collective bargaining agreement provision which permitted promotion to the most senior employee in the next lower rank with a thirty-day probationary period. No examination, written or oral, was required. Recognizing the rights of the city and the employee bargaining unit to enter such an agreement, the court held:

"It is our conclusion that Chapter 4117 Revised Code authorizes public employers and public employees to enter into labor agreements which agreements provide for promotions within the classified services without competitive examinations and that such a process does not conflict with the Constitution or laws of Ohio."

Taxpayers do not have the right to enforce laws which are preempted under the terms of a collective bargaining agreement entered into pursuant to R.C. Chapter 4117. Since the city of Mayfield Heights and the Union have negotiated a collective bargaining agreement under those statutes which calls for grievance and arbitration, it would frustrate the purpose of the Act to allow taxpayers to enforce laws which the Union or its individual members could not.

In the recent case of *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 558 N.E.2d 49, twenty-six Dayton police officers attempted to file a taxpayer's action to compel the city of Dayton to provide additional vacation time under R.C. 9.44. The court resolved the case in favor of the plaintiff police officers upon a finding that the vacation provisions of the collective bargaining agreement did not specifically exclude R.C. 9.44 rights. *Id.* at 19, 558 N.E.2d at 52. Section 14.1 of the Agreement, *sub judice*, states that all promotions will be made in accordance with the rules of the civil service commission. All other promotional procedures are therefore excluded. Pursuant to R.C. 4117.10(A), if an agreement makes no specification about a matter, the parties are subject to applicable state and local laws. The court in *Casper* went on to emphatically hold that "[t]his case, however, is not a 'taxpayer action.'" *Id.* at 20, 558 N.E.2d at 53. The Supreme Court supported that holding with citation to *State ex rel. White v. Cleveland* (1974), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, and declaring:

"*White* establishes that to maintain such an action under R.C. 733.59, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive or advantage. Appellants' action to compel fringe benefits for their own benefit does not represent such an aim. Nor is appellants' right to vacation pay a 'public' right. Thus, appellants are not eligible for the attorney fees that R.C. 733.61 makes available at the court's discretion in suits brought pursuant to R.C. 733.59." *Casper,* 53 Ohio St.3d at 20, 558 N.E.2d at 53.

By the same token, plaintiffs' interest in challenging the Grano promotion is, in essence, an attempt to preserve their own eligibility for a position he is claimed to have usurped. They will not be permitted to do indirectly what they could not do directly. The lower court correctly dismissed the alleged taxpayer's action to preserve the integrity of the collective bargaining agreement. We must assume that when the legislature passed the Public Employees' Collective Bargaining Act and failed to specifically exclude civil service requirements from its scope, it was contemplated that public employers and employees were free to negotiate the

terms of promotions and that the public interest would be protected and preserved in the give and take of the collective bargaining process.

Even if plaintiffs are assumed to have standing as taxpayers to challenge the appointment, their claim must fail. Plaintiffs claim that Section 9(C), Rule IV, of the Mayfield Heights Civil Service Rules was violated. This section states:

"No position above the rank or grade of patrolman and fireman shall be filled by any person unless he shall have first passed a competitive promotional examination to be held by the Commission within sixty days of such vacancy, if there is no eligible list for such grade or rank. No competitive promotional examination shall be held unless there are at least two persons eligible to compete."

However, the rules provided by the civil service commission for promotions also include Section 8, Rule VI, which reads:

"Emergency or temporary appointments may be made by the Mayor when the good of the service or the welfare of the public make it necessary in the judgment of the Mayor to do so. Notice, however, must be given to the Commission with the reasons for making such provisional appointments and such reasons must be satisfactory to the Commission. If such temporary employee holds said position continuously for one (1) year then that employee shall become permanent in nature and so certified as such."

These provisions must be read in *para materia* to give full effect and meaning to each of them. Lieutenant Grano was originally promoted pursuant to this emergency or temporary appointment section, and not Section 9(C). As to his subsequent permanent status, continuous performance in a position has been determined to be an acceptable substitute for competitive testing to determine the constitutional requirement of merit and fitness. *Richley v. Youngstown Civ. Serv. Comm.* (1984), 9 Ohio St.3d 15, 9 OBR 64, 457 N.E.2d 829, paragraph one of the syllabus; see, also, R.C. 124.271. In *Gannon v. Perk* (1976), 47 Ohio App.2d 125, 141, 1 O.O.3d 233, 242, 352 N.E.2d 606, 616, this court recognized that charter municipalities such as Mayfield Heights are free to adopt rules which would otherwise conflict with R.C. Chapter 124, specifically R.C. 124.271. Indeed, in response to the Supreme Court decision in *State ex rel. Bardo v. Lyndhurst, supra* on November 11, 1988, the citizens of Mayfield Heights amended their charter at Section 7, Article V, to read in pertinent part as follows:

"In any matter where a rule, regulation, order or decision of the Civil Service Commission conflicts with any provision of the laws, rules or regulations of the State of Ohio, the rule, regulation, order or decision of the Mayfield Heights Civil Service Commission shall prevail over and render null and void the State provision with respect to the City of Mayfield Heights. Civil Service examina-

tions shall not be required * * * for appointment to any other office or position requiring peculiar and exceptional qualifications. * * * Any person who shall have served the City for at least one year next preceding the taking effect of this Charter may be retained in the same or any similar position without examination. Except as herein provided, the Civil Service Commission shall determine the practicability of competitive examinations for any nonelective office of job classification in the service of the City."

Thus, the promotion of Lieutenant Grano was in complete accord with the charter of the City of Mayfield Heights and rules and regulations of the civil service commission, which themselves are not contrary to the merit and fitness requirements of the Ohio Constitution.

Notwithstanding plaintiffs' argument, there was no retroactive application of Civil Service Rule VI. Section 8, Rule VI, *supra*, became effective on May 4, 1989, and, one year later, Lieutenant Grano had met the requirements of the rule and became a permanent appointment on May 7, 1990. Anyone after May 4, 1989 holding a temporary appointment for more than a one-year period became a permanent appointee. Since Lieutenant Grano's permanent appointment was after one year, there was no retroactive application of the new rule.

■ It is well established law in Ohio that a declaratory judgment action may not be maintained if there is an exclusive statutory remedy which a party must use. *Dayton Transit Co. v. Dayton Power & Light Co.* (1937), 57 Ohio App. 299, 10 O.O. 500, 13 N.E.2d 923, paragraph two of syllabus; *State ex rel. Iris Sales Co. v. Voinovich* (1975), 43 Ohio App.2d 18, 23, 72 O.O.2d 162, 165, 332 N.E.2d 79, 82; *Standard Oil Co. v. Warrensville Hts.* (1976), 48 Ohio App.2d 1, 13, 2 O.O.3d 4, 10, 355 N.E.2d 495, 504.

R.C. Chapter 4117 provides such statutory remedies. R.C. 4117.09(B)(1) mandates that each collective bargaining agreement contain a grievance procedure which may culminate with final and binding arbitration of grievances and disputed interpretations of agreements. R.C. 4117.10(A) states that "[i]f the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure * * *." Article IX of the Agreement contains such a grievance procedure culminating in final and binding arbitration.

Plaintiffs maintain that as taxpayers they need not exhaust the grievance procedure. However, their reliance on *Brauer v. Cleveland* (1963), 119 Ohio App. 159, 26 O.O.2d 379, 191 N.E.2d 847, cited in support of this claim, is misplaced. They state that the *Brauer* court "emphasized that plaintiff [Brauer] was not required to exhaust any personal administrative remedies that may have been

available." However, the *Brauer* court noted that at 163, 26 O.O.2d at 382, 191 N.E.2d at 849:

"In 18 McQuillin, Municipal Corporations (3rd Ed.), 23, Section 52.08, 'Existence of Another Remedy,' it is stated:

"It is generally held that *a taxpayer's suit does not lie if there is an adequate remedy at law,* and the inadequacy of the remedy at law is often relied on as ground for equitable relief. * * * " (Emphasis added.)

The *Brauer* court then further stated that:

"In the case at bar, after considering the gamut of legal remedies, it is our finding that none exists which would afford adequate relief to the plaintiff and the class she represents." *Id.* at 164, 26 O.O.2d at 383, 191 N.E.2d at 850.

The court recognized that if an adequate remedy at law exists, it must be pursued prior to filing declaratory judgment or a taxpayer's action. The Agreement's grievance procedure at issue provides these plaintiffs with an adequate remedy at law. This court so held in *State ex rel. Sporar v. Mayfield Hts.* (Aug. 10, 1990), Cuyahoga App. No. 57179, unreported, where it stated at 11–12, 1990 WL 118325:

"Similarly, we cannot find that relator lacked an adequate remedy in the ordinary course of the law. Article 6 of the collective bargaining agreement provides a grievance procedure. If the grievance is not satisfactorily resolved during the several steps of the grievance procedure, Local 1500 may submit the grievance to binding arbitration. The record does not reflect that relator filed or prosecuted a grievance. In *Rollins, supra,* the Supreme Court stated:

" 'Rollins could have initiated and processed a grievance without union support. Therefore, Rollins had an adequate remedy at law for resolving that issue. See *State ex rel. Bardo v. Lyndhurst* (1988), 37 Ohio St.3d 106, 112–113, 524 N.E.2d 447, 453–454. Relator in this case could have initiated and processed the first three steps of the grievance procedure before requiring union support. The parties' stipulations do not reflect that relator filed a grievance. In light of relator's failure to initiate and process a grievance, we cannot find that the grievance procedure did not provide relator with an adequate remedy at law.' "

The grievance procedure was plaintiffs' exclusive remedy and it cannot be evaded by trying to convert it into a taxpayer's action.

The second assignment of error is without merit.

"III. The appellants, as fire fighters, possess rights separate and distinct from their collective bargaining agreement, and thus have the capacity to maintain an action against appellees for violations committed under the civil service rules."

Public employees are subject to binding arbitration with respect to those subjects contained in the collective bargaining agreement with their employer. To avoid this conclusion, plaintiffs claim that the subject matter of this dispute is not contained within the Agreement and that they, therefore, possess rights separate and distinct from the Agreement.

Plaintiffs claim that the Agreement does not provide relief when the mayor "retroactively" applies a civil service rule or places a freeze on promotions. Clearly, each allegation arises directly from the procedures surrounding the proper application of the promotion provision of the Agreement. It should not be given a narrow reading in view of its salutary purpose. In *State ex rel. Ramsdell v. Washington Local School Bd.* (1988), 52 Ohio App.3d 4, 6, 556 N.E.2d 197, 199, the court declared:

"We believe a collective bargaining agreement should not be read so narrowly. As was stated in *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409]:

" ' * * * [A collective bargaining agreement] is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate * * *.' *Id.* at 578 [80 S.Ct. at 1351, 4 L.Ed.2d at 1415].

In *Ramsdell*, appellant claimed that her dispute was not specifically included within the terms of the collective bargaining agreement and she did not need to seek redress in the grievance procedure. She claimed that since she was a guidance counsellor she was not covered by a section of her contract entitled "Teachers Tenure." The court, citing the above proposition of law, rejected the appellant's contention and affirmed the trial court's finding that it lacked subject matter jurisdiction. The court noted that the section entitled "Teacher Tenure" adequately covered the dispute. *Id.,* 52 Ohio App.3d at 6, 556 N.E.2d at 199.

In *State ex rel. Sporar v. Mayfield Hts., supra,* this court rejected a narrow construction and stated that Article XIV requires that all promotions "be handled in the manner provided for by the Civil Service Commission through its rules and regulations as provided in the City Charter." *Id.* at 10. If Lieutenant Grano was not promoted in a manner provided for by the applicable Civil Service Rules, the plaintiffs had a bona fide grievance, and should have availed themselves of that grievance procedure.

Plaintiffs' reference to *Tapo v. Columbus Bd. of Edn.* (1987), 31 Ohio St.3d 105, 31 OBR 268, 509 N.E.2d 419, is unavailing. Tapo's complaint was filed in 1981 and was not subject to the Ohio Public Employees' Collective Bargaining Act which was not passed until 1984. Further, the court stated that the employee was not required to follow the grievance arbitration procedure where (1) the board stipulated the correctness of the plaintiff's claim, *i.e.,* the teacher was

qualified for the higher salary, and (2) there was no "statute of limitations" to correct the erroneous placement of the plaintiff on the wrong salary schedule.

Neither of these factors applies in the instant case. The city has not stipulated that the promotion of Lieutenant Grano was done erroneously or in violation of the Agreement. On the contrary, the city contends the promotion of Grano to Lieutenant was effected in accordance with the civil service rules. Also, the instant Agreement clearly contains a limitations period for bringing grievances, *i.e.*, no later than thirty days after the alleged misapplication. Section 9.5, Article IV. Since plaintiffs cannot meet the requirements set forth by the majority in *Tapo, supra,* we find the statements of Judge Markus, dissenting in *Tapo,* most appropriate:

"The teachers in this case are attempting to avoid the exclusive grievance procedures in their master collective bargaining agreement by mislabeling their claims. They purport to seek 'back pay' because they did not assert their grievances in the proper forum when they were timely. They conveniently characterize their untimely and procedurally barred claims as new claims for back benefits. In my view, this court should require the parties to comply with their agreement for a prescribed alternate dispute resolution mechanism. *Id.,* 31 Ohio St.3d at 108, 31 OBR at 270, 509 N.E.2d at 421.

Plaintiffs' claims herein are nothing more than grievances by employees disguised as taxpayers for the purpose of avoiding the grievance obligations that their selected representative the Union has negotiated for them and which they ratified. If Union members can avoid the compulsory grievance procedures achieved through the collective bargaining process by also claiming to be taxpayers, the fundamental obligation to submit to grievance procedures is not worth the paper it's written on and the whole public employee collective bargaining process will swiftly begin to unravel.

This assignment of error is overruled.

"IV. The Mayfield Heights Civil Service Commission is mandated to investigate an allegation of a violation of its rules and it may be compelled to do so by the fire fighters who have an interest in the investigation."

The plaintiffs claim that the Civil Service Commission of Mayfield Heights failed to conduct an investigation into the Mayor's illegal practices and breached its duty under R.C. 124.56. We find that section does not apply. Their reliance on R.C. 124.56 is unsupported.

R.C. 124.56 states that when a civil service commission "has reason to believe that any officer * * * having the power of appointment, has abused such power by making an appointment" in violation of R.C. Chapter 124, the commission shall conduct an investigation. But R.C. Chapter 124 does not apply because

Mayfield Heights is a charter municipality under Sections 3 and 7 of Article XVIII of the Ohio Constitution, and it has adopted civil service rules contrary to R.C. Chapter 124. Obviously, R.C. 124.56 authorizes investigations by those commissions which exclusively follow state law. Mayfield Heights does not and is not obligated to investigate violations of state law. The Mayfield Heights Charter, as amended November 11, 1988, provides: "In any matter where a rule, regulation order or decision of the Civil Service Commission conflicts with any provision of the laws, rules or regulations of the State of Ohio, the rule, regulation, order or decision of the * * * Commission shall prevail over and render null and void the State provision with respect to the City of Mayfield Heights."

Further, R.C. 124.56 does not apply in this instance because the grievance and arbitration provisions of the Agreement prevails over any law. R.C. 4117.10(A) explicitly states that civil service commissions have no jurisdiction in such matters. Specifically, the statute states:

"If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure *and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that are the subject of a final and binding grievance procedure.*" (Emphasis added).

Consequently, the Civil Service Commission in Mayfield Heights has no jurisdiction to hear this matter or to investigate the matter. Any alleged violation of the promotion procedures is a grievance which can and should only be heard through the agreed grievance procedure and not as an original proceeding or on an appeal to the civil service commission.

The fourth assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and MATIA, J., concur.