LANE et al., Appellees,

v.

**CINCINNATI CIVIL SERVICE COMMISSION et al.,**
**Appellees;  City of Cincinnati et al., Appellants.**

[Cite as *Lane v. Cincinnati Civ. Serv. Comm.* (1997), 122 Ohio App.3d 663.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960698.

Decided June 25, 1997.

*Schwartz, Manes & Ruby, William S. Wyler* and *Donna M. Bergmann,* for appellees.

*Fay D. Dupuis,* City Solicitor, *Rodney Prince* and *John J. Williams,* Assistant City Solicitors, for appellants.

PAINTER, Presiding Judge.

## I.   Facts

This case is the latest part of the continuing saga in which the city of Cincinnati attempts to abolish firefighter positions.  This chapter in the saga began in 1978 and 1979 when three positions were abolished by the defendants-appellants city of Cincinnati and the City Manager (collectively, "the city").  These abolitions were challenged in court by three firefighters who were eligible for promotion into those positions.

On October 5, 1994, this court entered a memorandum decision that stated that the city's attempted elimination of the three district fire chief positions was "improper and contrary to state civil service law * * * " and, therefore, that the positions remained in existence, and vacant, at a time when the plaintiffs in *that* case were eligible for promotion into *those* positions.  See *McDonald v. Cincinnati* (Oct. 5, 1994), Hamilton App. No. C–930718, unreported, 1994 WL 536197. On remand, the city proposed that the three plaintiffs be promoted to *completely separate positions* that had been vacated, intending that the promotions would settle the pending case while still effectively abolishing the three positions that this court held had not been properly abolished.  The trial court entered final judgment in favor of those plaintiffs and ordered the city to promote them pursuant to the city's proposal, which the trial court attached as Exhibit A. Despite the city's stated intentions in Exhibit A, the trial court's order was silent with respect to the disposition of the three vacant positions.

Exhibit A refers to a collective-bargaining agreement with regard to the three positions. In June 1993, while *McDonald* was pending, the city and the Firefighters' Union, Local 48 ("the union") had indeed entered into a collective-bargaining agreement ("the agreement"). They devoted Article XXXIV to the abolition of positions with the express intent of superseding R.C. Chapter 124.

Three other positions are at issue besides the positions litigated in *McDonald*. The city "abolished" another district chief position in June 1986 and a fire lieutenant position in February 1991—both prior to the collective-bargaining agreement. The city also "abolished" a district chief position in October 1993, after the collective-bargaining agreement was in place. The city promoted fire captains into the district chief positions, then demoted them to fire captain the next day. With the fire lieutenant position, the city merely moved a lieutenant to a new position and left his former position vacant. We cannot determine from the record whether the City Manager signed an "appropriate form for abolition" within ten days of the vacancy, as required by the June 1993 collective-bargaining agreement.

The plaintiffs-appellees ("the promotion-eligible firefighters") are collectively the promotion-eligible firefighters who stand to fill the vacancies if the positions are deemed to exist. The defendant-appellant Cincinnati Civil Service Commission ("the CCSC") held by a two-to-one vote that (1) it had jurisdiction to hear the promotion-eligible firefighters' complaint, and (2) the claims of the promotion-eligible firefighters should be reexamined, and status and compensation awarded based not on the collective-bargaining agreement, but on R.C. 124.37.[1] The city appealed to the Hamilton County Court of Common Pleas under R.C. 2506.01. The promotion-eligible firefighters moved for summary judgment on the jurisdiction question and the applicability of the collective-bargaining agreement. The trial court granted summary judgment to the promotion-eligible firefighters and affirmed the CCSC decision. The trial court further found that the city had acted in bad faith and awarded attorney fees to the promotion-eligible firefighters.

In four assignments of error, the city appeals the decision of the trial court and argues that (1) the promotion-eligible firefighters were barred by collateral estoppel from challenging the abolition of three positions, (2) the CCSC did not have jurisdiction over the abolition of positions under the collective-bargaining agreement, (3) the trial court erred by failing to provide findings of fact and

---

1. We note from the outset that R.C. 124.37 does *not* govern the abolition of jobs, but rather removals, reappointments, and demotions in police and fire departments. R.C. 124.321 covers the abolition of civil service jobs as of 1987. Generally, R.C. 124.37 comes into play with demotions concurrent with the abolition of a position. But if no removal, reappointment, or demotion occurs, then R.C. 124.37 does not apply.

conclusions of law with respect to the issue of "bad faith" and the award of attorney fees, and (4) the trial court erred in granting attorney fees to the promotion-eligible firefighters.

## II.  Collateral Estoppel

The city first argues that the promotion-eligible firefighters are collaterally estopped from asserting their claims to the positions allegedly abolished pursuant to *McDonald, supra.*  For collateral estoppel to apply, the city must show that (1) the promotion-eligible firefighters in this case are in privity with those in *McDonald,* (2) the three positions were abolished in *McDonald* after a full and fair opportunity to litigate the issue, (3) the abolition of the three positions was tried and decided, and necessary to the final judgment, and (4) the issue here is identical to the issue in *McDonald.*  See, generally, *Monahan v. Eagle Picher Industries, Inc.* (1984), 21 Ohio App.3d 179, 21 OBR 191, 486 N.E.2d 1165.  See, also, *Monfort Supply Co. v. Cheviot* (Sept. 27, 1995), Hamilton App. No. C–940898, unreported, 1995 WL 566641.

The city must, as a preliminary matter, demonstrate that the trial court abolished the positions by its order in *McDonald.*  Our examination of the trial court's order in *McDonald* leads us to conclude that the three positions were *not* abolished as part of the resolution of that case.  This court held:

"[T]he City's elimination of the three District Fire Chief positions was improper and contrary to state civil service law * * *.  [T]he three positions continued to exist and were vacant and still available when the appellees gained the necessary eligibility to be considered for these employment advancements."

Pursuant to this decision, the trial court granted judgment to the firefighters seeking promotion in *McDonald,* ordering the city to *promote* them retroactively "as described in the attached Exhibit A."  Exhibit A proposed to promote those firefighters to *other* positions, leaving the three in question still vacant.  Exhibit A *proposed* that "[t]his activity abolishes three District Chief positions per the current labor/management agreement."  But the trial court was silent with respect to this statement and these positions—positions that this court held to exist at the time of the *McDonald* decision.  For these positions to have been properly abolished, the city would first have had to undertake the appropriate administrative action as of some date after the trial court's decision.

Therefore, collateral estoppel cannot apply with respect to these positions, and we overrule the first assignment of error.  Whether that proper administrative action was statutory or contractual and whether the actions taken were proper are the subjects of the second assignment of error.

### III. Jurisdiction of the CCSC

In its second assignment of error, the city argues that the CCSC has no jurisdiction over the abolition of firefighters' positions when a collective-bargaining agreement applies to provide final and binding arbitration of grievances with regard to the abolition of firefighters' jobs.

As a preliminary matter, we note that the effective date of the collective-bargaining agreement is June 20, 1993. Positions abolished before that date cannot conceivably fall under its provisions, and, therefore, must be adjudicated under state statutes.[2] In this case, those positions are the district chief position allegedly abolished in June 1986 and the fire lieutenant position allegedly abolished in February 1991. The CCSC had jurisdiction over those positions because the collective-bargaining agreement took effect after the abolition of those positions. Nothing in the record shows that the city followed the procedure to abolish those positions outlined in the collective-bargaining agreement after June 20, 1993. Therefore, we overrule the assignment of error and affirm the trial court with respect to those two positions.

With respect to the three positions at issue in *McDonald, supra,* we stated in our discussion of the first assignment of error that the trial court did not abolish those positions in its order. Absent proper administrative action by the city after *McDonald,* these positions remained open. We find no evidence in the record that the city took any action—either under R.C. 124.37 or under the collective-bargaining agreement—to abolish these positions after the trial court's order in *McDonald.* Therefore, these positions remained open and vacant, and we overrule the assignment of error and affirm the trial court with respect to those positions.

This leaves the district chief job abolished in October 1993. It remains for this court to determine whether the CCSC had jurisdiction over that abolition.

Article I of the collective-bargaining agreement states that any conflict between state law and the agreement is to be construed in favor of state law. But we can discern no conflict. State law permits collective-bargaining agreements to supersede provisions such as those found in R.C. 124.321 and 124.37. See R.C. 4117.08 and 4117.10.[3]

---

**2.** The collective-bargaining agreement in place before June 20, 1993, is not part of the record in this case. Therefore, we cannot ascertain whether any procedure for abolishing positions aside from state statute might have applied, although we surmise from past cases that the statutory procedure under R.C. Chapter 124 was applicable before the agreement at issue in this case.

**3.** See, also, *DeVennish v. Columbus* (1991), 57 Ohio St.3d 163, 566 N.E.2d 668; *DeCrane v. Westlake* (1995), 103 Ohio App.3d 481, 659 N.E.2d 885; *Mayfield Hts. Fire Fighters Assn. v. DeJohn* (1993), 87 Ohio App.3d 358, 622 N.E.2d 380; *FOP Lodge 67, Independence Div. v. Independence* (Oct. 15, 1996), Cuyahoga App. No. 70429, unreported, 1996 WL 596448.

The city and the union expressly agreed to supersede R.C. Chapter 124 with the abolition procedure outlined in Article XXXIV of the agreement. This portion of the agreement is effective under R.C. 4117.10 as long as the agreement provides for final and binding arbitration of grievances. R.C. 4117.10 states that if the agreement provides for binding arbitration, then "* * * public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure." Thus, if the agreement provides for binding arbitration to adjudicate appeals brought by parties affected by the abolition of a position under the agreement, then that part of the agreement is valid.

In determining whether it had jurisdiction, the CCSC specifically held that the city did not agree to binding arbitration under the agreement because in Article V it reserved its rights under R.C. 4117.08(C).[4] But, as a general matter, contracts are to be construed so as to give effect to all of their provisions. *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 517 N.E.2d 559. The only possible reading of Article V is that the general reservation applies "except as provided herein." We read that general reservation subject to the specific provisions in the rest of the agreement. And even if we agreed that these provisions were in conflict, the specific provisions of Article XXXIV would prevail over the general provisions of Article V. See, *e.g., Gibbons–Grable Co., supra.* Thus, the general reservation of rights and responsibilities under Article V does not preclude Article XXXIV from more specifically governing the abolition of positions.

Article XXXIV states:

"It is expressly agreed that the contractual provisions contained in this section are intended to modify or replace the application of the statutory terms set forth in O.R.C. 124.37, O.R.C. 124.321 and any other statute or regulation related to abolishing uniformed civil service positions in the Fire Division."

The CCSC found this statement ambiguous, but we disagree. Article XXXIV continues:

"Any provision * * * which may apply to the abolishment [*sic*] of positions, which provision is in conflict· with the terms of this Article, shall be null and

---

4. R.C. 4117.08(C) lists areas that remain the exclusive right of a public employer "unless a public employer agrees otherwise in a collective bargaining agreement."

suspended, shall not be binding upon these parties and shall be surperceded [*sic* ] and replaced by the terms of this article."

From the applicable law and the provisions of the agreement, we can only conclude that (1) the city and the union intended the collective-bargaining agreement to cover the abolition of positions, superseding R.C. Chapter 124, (2) R.C. Chapter 4117 permits this intention, and (3) the agreement is not ambiguous insofar as the statement that Article XXXIV supersedes R.C. Chapter 124. As a result, grievances brought regarding the improper abolition of positions are not subject to the CCSC's jurisdiction because the agreement contains a provision for binding arbitration of grievances. Under the grievance procedure outlined in Article VI of the agreement, step four provides that grievances are to be submitted to binding arbitration for resolution, in accordance with the express provisions of R.C. 4117.10.

Therefore, during the time period that the collective-bargaining agreement was applicable, from June 20, 1993 to June 17, 1995, the city was required to follow the procedures set forth in Article XXXIV, and not R.C. Chapter 124, to abolish a position in the fire division. Grievances with respect to any position abolished under this agreement were not subject to the jurisdiction of the CCSC, but rather to the grievance procedure outlined in Article VI of the agreement. The district chief position abolished in October 1993 falls within this time frame, and the CCSC had no jurisdiction over the abolition of that position.

Accordingly, we overrule the assignment of error with respect to the two positions allegedly abolished prior to June 20, 1993, and the three positions allegedly abolished as a result of the *McDonald* decision, and sustain the assignment of error with respect to the district chief position abolished in October 1993, which is not subject to the jurisdiction of the CCSC, but rather is subject to the grievance procedure in the agreement.

### IV. Applicability of Civ.R. 52 and the Grant of Attorney Fees

We address the third and fourth assignments of error together. Civ.R. 52 states in pertinent part that when questions of fact are tried by the court without a jury, a general judgment may be entered unless one of the parties in writing requests otherwise before the entry of judgment. If a request is made, the court shall state in writing the findings of fact found separately from the conclusions of law. But findings of fact and conclusions of law are unnecessary upon Civ.R. 56 motions.

Here, we have a Civ.R. 56 motion, but as a result of that motion, the trial court determined that the city had acted in bad faith. The city filed its request for findings of fact and conclusions of law within seven days of the trial court's

judgment and submitted its proposed findings of fact and conclusions of law on the determination that the city had acted in bad faith.

The controlling element is whether the judgment that was entered under Civ.R. 56 was proper—whether there were no issues of material fact regarding the city's bad-faith actions. Therefore, our inquiry must start with whether the determination of bad faith was appropriate for summary judgment. If it was, Civ.R. 52 does not apply. If it was not, then this issue must be remanded for trial and, upon request, for findings of fact and conclusions of law by the trial court on whether the city acted in bad faith, entitling the promotion-eligible firefighters to attorney fees.[5]

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court held that the party moving for summary judgment must be able to point to some specific evidence of the type listed in Civ.R. 56(C) that affirmatively shows that the nonmoving party has no evidence to support its claims. Thus, the promotion-eligible firefighters must point to specific evidence that shows that there is no issue of material fact and that, as a matter of law, reasonable minds can come to only one conclusion—that the city acted in bad faith. See, *e.g., Dresher, supra.*

"Bad faith" is defined as "a dishonest purpose, moral obliquity, conscious wrongdoing [or] breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572. Here, the promotion-eligible firefighters' conclusory assertion that the city "knows" that this case is controlled by R.C. 124.37—the only issue disputed by the city in this case—does not conclusively demonstrate bad faith. Even if it were part of the record, evidence that the city failed to follow R.C. 124.37 in *other* cases where R.C. 124.37 clearly applied is not proof of bad faith in *this* case, where the applicability of R.C. 124.37 is the contested issue. Prior cases turned on whether the city followed R.C. 124.37 correctly, not whether it was required to follow R.C. 124.37 instead of the terms in a collective-bargaining agreement.

From the record before us, we are persuaded that reasonable minds can at least differ on whether the city acted in bad faith *in this case,* and this issue is not appropriate for summary judgment. We believe that three categories of

---

5. We are aware that any time a trial court fails to comply with Civ.R. 52, the appellate court lacks jurisdiction. *Walker v. Doup* (1988), 36 Ohio St.3d 229, 522 N.E.2d 1072; *State ex rel. Vanmeter v. Lawrence Cty. Bd. of Commrs.* (July 8, 1994), Lawrence App. No. 93CA27, unreported, 1994 WL 323703 But in *Walker,* Civ.R. 52 was clearly applicable and in *State ex rel. Vanmeter,* there was no question that the trial court would have had to comply with Civ.R. 52 had the party requesting the findings of fact and conclusions of law filed proposed findings and conclusions. Here, the applicability of Civ.R. 52 itself is at issue.

positions exist in this case for a factual inquiry on the issue of bad faith and each set of attendant attorney fees: (1) the positions discussed in *McDonald, supra,* (2) the positions abolished prior to the effective date in the collective-bargaining agreement that were not discussed in *McDonald, supra,* and (3) the position that was abolished after the effective date of the collective-bargaining agreement.

Because we hold that the trial court's determination of bad faith and grant of attorney fees were not appropriate for summary judgment, we sustain the third and fourth assignments of error and remand this issue for resolution of these issues on the merits.

## V. Conclusion

As discussed above, we (1) hold that collateral estoppel does not apply and overrule the first assignment of error, (2) overrule the second assignment of error with respect to the five positions allegedly abolished prior to 12:01 a.m. June 20, 1993, under the jurisdiction of the CCSC and subject to R.C. 124.37, (3) sustain the second assignment of error to the extent that the district chief position abolished in October 1993 was not subject to the jurisdiction of the CCSC and was subject instead to the grievance procedures outlined in the collective-bargaining agreement, and (4) sustain the third and fourth assignments of error because issues of material fact remain, negating the summary judgment and requiring a hearing on the merits.

We remand this case for a hearing on the merits to resolve whether the city acted in bad faith and must now provide attorney fees with respect to each of the three categories of positions outlined above.

*Judgment accordingly.*

DOAN and MARIANNA BROWN BETTMAN, JJ., concur.